## STATE v. AUGHTRY.

1. CRIMINAL LAW—CHARGE—MURDER.—Where a Judge, in his charge, correctly defines the four possible verdicts in a murder case, and the crimes of murder and manslaughter, it is not error if, when asked by the jury to explain difference between murder and manslaughter, he does not specifically explain the punishments following the different verdicts.

2. IBID.—NEW TRIAL—JURY.—An explanation by a jury as to what they understood the duration of the punishment following a certain verdict to be, should not influence the Judge on motion for new trial.

3. IBID.—IBID.—MURDER.—It is not sufficient ground for new trial for Judge to permit solicitor to open in Court a package containing a dress said to have been worn by a lady when plotting the murder, when it is not offered in evidence.

4. SUPREME COURT—NEW TRIAL.—This Court will not review the refusal of a motion for a new trial upon a question of fact.

5. IBID.—OBJECTION.—This Court cannot relieve a party against irrelevant testimony admitted without objection.

6. EVIDENCE—A WITNESS may give the contents of a note which he has lost.

7. CRIMINAL LAW—EVIDENCE.—Under the facts in this case, the testimony, that the defendant said he was going to Nebraska with his girl, but that he was going to make her husband bite the dust first, was competent.

8. IBID.—CHARGE.—In charging a jury, may the Judge state undisputed or admitted facts, or conclusions? *See separate opinion of* MR. JUSTICE JONES. *Norris* v. *Clinkscales*, 47 S. C., 517, *criticised*.

9. CHARGE—CIRCUMSTANTIAL EVIDENCE is lawful evidence, and any prejudice against it is contrary to law, and it is not error for Judge to say so.

10. EVIDENCE—CIRCUMSTANTIAL EVIDENCE has just as much respect in the law as positive evidence, provided it carries conviction to the minds of the jurors.

11. CHARGE—ALIBI.—The hypothetical case used by the Judge in this case to illustrate the defense of *alibi*, held not to be misleading.

12. CRIMINAL LAW—REASONABLE DOUBT.—After the Judge has given various legal definitions of "reasonable doubt," it is proper to say that the phrase is self-explanatory.

13. CHARGE—CIRCUMSTANTIAL EVIDENCE.—The fourth request of the defendant, as to the weight and effect of circumstantial evidence, was properly refused.

14. IBID.—EVIDENCE.—To charge a request, indicating that the testimony in the case is all of a certain kind, would be contrary to sec. 26, art. V., Con. 1895.

15. CRIMINAL LAW—CIRCUMSTANTIAL EVIDENCE.—The Judge in this case correctly expounded the substantive and vital principles going to make up the chain of circumstantial evidence necessary to convict in criminal cases.

16. IBID.—MURDER—MOTIVE.—It is not necessary for the State to show a motive for the killing in a homicide case.

17. CHARGE—ABSTRACT PROPOSITIONS.—The Judge is not required to charge mere abstract propositions, even when requested.

18. CHARGE—REQUEST.—Where a Judge has, in a previous portion of his charge, substantially covered a request, he may refuse it.

19. AN EXCEPTION not pointing out a specific error will not be considered.

20. PETITION FOR REHEARING refused.

Before GARY, J., Richland, April, 1896.　Affirmed.

Indictment against Thomas C. Aughtry for murder. Convicted, with recommendation to mercy, and sentenced to penitentiary for life.　Defendant appeals.

*Messrs. Andrew Crawford, E. McC. Clarkson,* and *W. D. Melton,* for appellant, cite: *Charge on facts:* Sec. 26, art. V., Con. 1895; 31 S. C., 235; 32 S. C., 45; 47 S. C., 517; 15 S. C., 392; 14 Rich. L., 23; 28 S. C., 254, 272; 63 Ga., 639; 7 Nev., 148; 29 S. C., 15.　*Reasonable doubt:* 12 N. E. R., 865; 38 S. C., 352; 39 S. C., 108; 32 S. C., 404; 33 S. C., 134; 85 Cal., 568; 117 Mo., 649.　*Circumstantial evidence:* 2 Blatch., 207; 102 Mo., 374; 111 Mo., 538; 32 Cal., 213; 12 La. R., 661; 25 Miss., 584; 38 Neb., 375; 38 S. C., 352;

35 S. C., 16; 32 Ga., 515; 39 Ala., 684; 6 N. Y. Cor. R., 406.
*In cases of circumstantial evidence motive must be shown:*
7 N. Y. Cr. R., 30.    *Alibi:* 117 N. Y., 480.    *Irrelevant testimony:* 4 N. Y. Crim. Rep., 272.    *Proof of lost paper:* 14 S. C.,
592; 43 S. C., 370; 48 N. W. R., 261; 32 Ala., 719; 15 Rich.,
368; 87 Ga., 573.

*Mr. Solicitor Thurmond,* contra, cites: *Charge on facts:*
5 S. C., 69; 15 S. C., 392; 24 S. C., 505; 31 S. C., 235.
*Killing implies malice:* 29 S. C., 201; 30 S. C., 74.    *Charge
on facts relates to disputed matter:* 24 S. C., 505; 37 S. C.,
253; 38 S. C., 31; 47 S. C., 517; 16 S. C., 495; 17 S. C., 137;
19 S. C., 594.    *Circumstantial evidence:* 35 S. C., 25.    *Request to charge on force and effect of testimony properly refused:* 22 S. C., 545.    *Alibi:* 36 S. C., 487.    *State not required
to show motive:* 20 S. C., 441.    *Exceptions too general:* 14
S. C., 178.    *Charge as to recommendation:* 33 S. C., 83.
*Judge may state no testimony to sustain certain defenses:* 19
S. C., 94.    *Proof of lost paper:* 43 S. C., 370; 14 S. C., 588.

This opinion was filed February 10, 1897, but by order of
Court remittitur was stayed until May 1, 1897.

MR. JUSTICE POPE.  Conway B. Oliver, while employed
by the Southern Railway Company, was proceeding to the
home of his wife's parents, just beyond Shandon, on the
evening of the 5th day of March, 1895, when he was shot
to death.  His body was found with his bucket by his side
and with two fish, which, no doubt, he had intended as a
present to the family he was about to visit.  Thomas C.
Aughtry was arrested and charged with the murder.  On
an indictment therefor he was duly tried at the summer,
1895, term of the Court of General Sessions for Richland
County, and the verdict of the jury was guilty of murder;
but the presiding Judge, on motion, granted the prisoner a
new trial.  He was again tried at the fall term, for 1895,
which resulted in a mistrial; but at the spring, 1896, term
he was again tried, and the verdict of the jury was guilty

of murder, accompanied by a recommendation to mercy, which, under our present law, required imprisonment in the state penitentiary during the whole period of his natural life. After such judgment he moved the Circuit Judge to grant him a new trial, which motion was denied. Then he appealed to this Court upon many grounds.

We will first consider his motion for a new trial to decide if the Circuit Judge was in error in the refusal thereof. The 24th, 25th, and 26th grounds of appeal relate to this issue, and are as follows: "24. For that his Honor erred in refusing to grant the defendant's motion for new trial, upon the ground, first, because his Honor misdirected and misled the jury to the prejudice of the defendant, and wittingly influenced the verdict as found by them, by failing to charge the jury in response to the additional instruction requested by them as to what would be the effect of a verdict of guilty, with recommendation to mercy, and what the effect of a· verdict of guilty of manslaughter; and in failing correctly to charge the jury the distinction between murder and manslaughter." In his general charge to the jury, his Honor, Ernest Gary, as presiding Judge, has said: "You will first inquire if a murder was committed at that time (the 5th March, 1895.) In order to ascertain that fact it is proper I should define to you what constitutes murder in the eyes of the law. Murder is defined by the statute law of this State to be the killing of any person with malice aforethought, either express or implied. Now, don't understand from that definition, Mr. Foreman and gentlemen of the jury, that there are two kinds of malice, express and implied; there is but one kind of malice, but there are two modes by which you can ascertain whether or not there was malice. It can be expressed by word of mouth, by verbal declaration, or by such acts as lying in wait, or preconceived plans or plots, or it may be inferred, implied from the facts and circumstances surrounding the homicide. (When you have ascertained that there was malice—you have those different modes by which you

may ascertain whether or not there was malice.) If you find there was malice, then the killing is said to be, in the eyes of the law, murder." Manslaughter was defined in the general charge thus: Manslaughter "is the unlawful killing of another without malice, either express or implied." After the jury had retired to their room for consultation, and had there remained for several hours, the following note was sent by them to the Judge: "To his Honor, Judge Ernest Gary: We would like for you to explain the four verdicts mentioned in your charge to the jury, and particularly *manslaughter.* Respectfully submitted, Wm. Platt, foreman. Please answer to-night." In response to this note the presiding Judge came into Court that night, and the following colloquy occurred: The Court (to the foreman): Have you agreed upon a verdict?" The foreman: "No, sir." The Court: "Is your difference one of law or one of fact? Do you differ as to the law of the case?" The foreman: "Yes, sir; little." The Court: "Is there any point of law you desire further instruction on?" The foreman: "We would like to know about manslaughter, the difference between that and murder in the first degree?" The Court: "Murder is defined under the statute law of this State to be the killing of any person with malice aforethought, either express or implied. From that definition you will see the element to constitute the crime of murder is that of malice, if done maliciously. Malice may be formed for any length of time, or may be formed immediately. Malice is evidenced by such acts as lying in wait, or threats or grudges, or any act which will show that the party had an ill will against the other, or it may be implied from the manner in which the killing took place—for instance, killing upon no provocation whatever, you might infer malice. Now, manslaughter differs from murder in this—manslaughter is one of the charities of the law; whereas manslaughter will be unlawful, yet if the party's mind was dethroned by sudden heat and passion, and he killed under such circumstances as that, although unlawfully done, the law comes in, and, ap-

preciating that the man's mind was dethroned by reason of sudden heat and passion, it takes a liberal view, and reduces the crime from murder to manslaughter, it being done in sudden heat and passion upon sufficient legal provocation. If done with premeditation, that would make it murder. If one were to spit in another's face, or from some other gross insult, on the impulse of the moment, the party would kill the other, although the killing would be unlawful, the law would take that charitable view, knowing human nature of such an one provoked, the reason being dethroned, and it would reduce the crime from murder to manslaughter. Under this indictment you can find one of four verdicts—guilty of murder, which would be death, or guilty with recommendation to mercy, which would reduce the punishment by reason of that verdict to imprisonment; guilty of manslaughter, or not guilty." The Court (to the foreman): "Anything further?" The foreman: "No, sir." The jury then retired. In the general charge, the presiding Judge had thus formulated his direction as to the verdict the jury in their discretion might render: "Now, under this indictment there are several forms of verdict you can find. You can find 'guilty,' which would be guilty of murder; or you can find a verdict of 'guilty with recommendation to mercy'—that is what is known as a special verdict, and that recommendation of itself changes the punishment. If you simply find 'guilty,' without recommendation to mercy, the penalty is that of death. If you recommend to the mercy of the Court, it changes the punishment to imprisonment in the state penitentiary for life. Or you can find a verdict, 'guilty of manslaughter,' which is the unlawful killing of another without malice, either express or implied; or you can find 'not guilty.'" It seems to us that the jury were satisfied with the explanation given by the Judge both on the four forms of the verdict and also as to the distinguishing features of murder and manslaughter. Surely the Circuit Judge carefully distinguished in his definitions of the crimes of murder, of the one part, and manslaughter, of the

other part.    Illustration is a very happy method by a Circuit Judge of conveying to a jury the difference between the crime of murder and that of manslaughter, after he has once given them an exact legal definition of each.    We do not see that the Circuit Judge was required, after having once carefully explained to the jury what the effect of a recommendation to mercy in a verdict of guilty of murder would be, to repeat it again in connection with the word "imprisonment."    That the jury after it had rendered its verdict should afterwards unite in an explanation of what they meant and understood as to the duration of the imprisonment which would follow such a verdict, should have no effect upon a judge, on a motion for a new trial, because of such an explanation.    It would, it seems to us, be very unwise to be governed by such an explanation of the verdict after it has been published, for it is well known that the grief of the family and friends of a prisoner, who has been sentenced to imprisonment for life, would very naturally touch the sympathies of a jury, thereby causing them to be willing to obviate the same if possible. The Circuit Judge did not err in this matter.

The 25th ground of appeal is in these words: "25. For that his Honor erred in refusing to grant the defendant's motion for a new trial upon the ground, second: because during the progress of the trial, the solicitor was permitted to display, and did display, in the presence of the jury, a blue dress alleged to have been worn by Mrs. Oliver, in company with Aughtry, while alleged to have been plotting the assassination of Oliver; the said garment being irrelevant to the issues raised in the case, and defendant having been in no manner connected with it."    We must say that the mere fact that the solicitor was allowed to untie a bundle in open Court, and take therefrom a blue dress, which appellant's counsel thought corresponded in color with that worn by Mrs. Oliver on the day her husband was murdered, cannot be taken notice of by this Court as a sufficient ground for imputing error in the

Circuit Judge in overruling a motion for a new trial. The "Case" fails to show that such blue dress was offered in testimony, though, no doubt, the solicitor might have been anxious to so offer it. We do not see how the jury could have been prejudiced by the sight of *a* blue dress, when witness after witness had testified that Mrs. Oliver did, on the 5th day of March, 1895, wear a blue dress. The Circuit Judge did not err, as here complained of.

The 26th ground of appeal is in these words: "26. For that his Honor erred in refusing to grant defendant's motion for a new trial, upon the ground, third: because the evidence was insufficient to warrant a conviction, and the verdict was against the manifest weight of the evidence." This Court has so often expressed the conclusion that no alleged error as to the *sufficiency* of evidence, or its manifest weight, so far as the same enter into a refusal of a motion for a new trial by a Circuit Judge in a case on the law side of the Court below, will be considered by us, that it is deemed necessary only to refer in a general way to our previous decisions on this point. This Court can only hear questions of law—errors of law in appeals from the decisions of courts of law. This ground of appeal is dismissed.

We will next consider the grounds of appeal, the 27th, the 28th, and the 29th, wherein the appellant alleges error in the Circuit Judge in admitting certain testimony. The 27th is in these words: "For that his Honor erred in admitting, after objection raised, the testimony of E. B. Moore, who testified that Aughtry said, while exhibiting a note: 'This is a ticklish point; she wants me to go to her room; I'll be damned if I don't, if I have to kill him;' the same being irrelevant, but tending to prejudice defendant in the minds of the jury." When this witness gave the testimony above quoted, he at once added: "I have no idea who he meant; he said 'it was his girl.' Didn't know he was keeping a woman." The "Case" fails to disclose that the defendant interposed any objection to

this testimony when given, or that he made a motion to have the same stricken out.   While it was irrelevant in the shape in which it appeared, this Court cannot protect persons who avoid the means of helping themselves.   The 27th ground of appeal is dismissed.

The 28th is in these words: "For that his Honor erred in admitting the testimony of Cindy Elkins as to the contents of the note alleged to have been received by her from Aughtry while he was in jail, the same not being the best evidence of its contents." The "Case" showed that Cindy Elkins swore that she had lost the note referred to.   Her testimony as to the contents of the lost note was competent.   This 28th exception is overruled.

The 29th exception is in these words: "29. For that his Honor erred in admitting the testimony of Bessie Smith, a witness for the State, who swore that Aughtry said he 'was going to Nebraska with his girl, and was going to make her husband bite the dust first,' the same being irrelevant and prejudicial to the defendant." We are quite sure that such testimony was prejudicial to the defendant.   We scarcely think any married man, who shows such wantonness as to leave his lawful wife and go to Nebraska "with his girl," could help being prejudiced in the eyes of an upright people by such brazen profligacy, and when to this is added the crime of the murder of the husband of his victim, the prejudice is heightened.   But was this testimony irrelevant?   The testimony was that he had declared that he did not love his wife; that Mrs. Oliver, the wife of the deceased, was the only woman he had ever loved; that he had been known to slap the face of his own wife when she quarreled with Mrs. Oliver.   Oliver had been murdered, and it was sought in this trial to show that Aughtry had murdered him.   Let this exception be overruled.

We will next consider the exceptions relating to alleged errors in the charge itself of the Circuit Judge: "1. For that his Honor, the presiding Judge, erred in saying

to the jury, in the course of his charge: 'I apprehend
you will have but little trouble in coming to a con-
clusion whether there was murder or not; I believe it was
conceded by the first counsel who addressed you that the
killing was a felonious one;' in that he thereby charged
upon the facts, and intimated his opinion with reference
thereto." The provision of the Constitution of 1895 is in
these words, article V., section 26: "Judges shall not charge
juries in respect to matters of fact, but shall declare the
law." This section of article V. of our present Constitu-
tion has very recently been passed upon by this Court in
an opinion showing great research, in the case of *Norris* v.
*Clinkscales*, 47 S. C., 517. One of the conclusions there
announced was: "It would seem, also, that a judge would
not be violating the constitutional inhibition, if he in his
charge repeated the testimony as to undisputed facts or ad-
mitted facts, or stated their legal effect, or pointed out the
different conclusions which might be drawn from them, or
the inquiries they would naturally give rise to." Now, in
the language of the Circuit Judge complained of there does
not appear that there is any statement of the testimony; he
merely states that he apprehends the jury will have little
trouble in reaching a conclusion whether there was murder
or not; but he couples to this his statement that there was
an admission of prisoner's counsel that the homicide was a
felonious one. It would be well to remember, in this con-
nection, that the defense set up by the accused was that of
an *alibi*, as is set out in his eleventh request to charge:
"The defense set up in this case is that of an *alibi*. A
prisoner or person accused of crime is said to set up an *alibi*
when he alleges that at the time when the offense with
which he is charged was committed he was 'elsewhere'—
that is, in a different place from that in which it was com-
mitted. If proved, it is a complete answer to the charge."
And the Circuit Judge charged this request is sound law.
It seems to us, therefore, that in the case at bar the defend-
ant's counsel had admitted that Oliver was murdered, but

interposed as the defense of his client an *alibi.* Viewed in this light, and remembering that part of the decision of *Norris* v. *Clinkscales, supra,* we have just quoted, this ground of appeal is dismissed.

The second ground of appeal is in these words: "For that his Honor erred in saying to the jury, in the course of his charge, 'I know there is great prejudice among quite a number of people against conviction on circumstantial evidence, but that is wrong,' in that he thereby gave to such evidence, in the minds of the jury, undue weight and effect, and charged upon the facts." We are unable to agree that this portion of the charge of the Circuit Judge is subject to criticism. That circumstantial evidence is competent evidence in courts of justice is a rule of law. Being a rule of law, any prejudice against the same is contrary to law, and it was perfectly legitimate for the Circuit Judge to point out such error. How such a reference to this branch of the law of evidence should be construed into giving it undue weight and effect, we cannot perceive, nor could it in any way be said to be a charge upon the facts. This ground of appeal is dismissed.

The third ground of appeal is in these words: "3. For that his Honor erred in charging the jury that circumstantial evidence has just as much respect in law as positive evidence, provided it brings conviction to the minds of the juries; and that the test of circumstantial evidence is, does it satisfy you to a moral certainty that the crime charged in the indictment has been committed, and the defendant did it? and that, if so, the case of the State would be made out, and that it would be the duty of the jury to find a verdict of guilty." So far as this exception relates to the estimate placed by the Circuit Judge upon the value of circumstantial evidence, he was entirely correct, but so far as this exception relates to the test of this kind of evidence, we will consider it fully hereafter in our consideration of the 8, 9, 10, 11, 12 grounds of appeal. This ground of appeal is overruled.

The fourth ground of appeal is as follows: "4. For that his Honor erred in charging the jury as follows: 'The defendant by his plea denies the charge in the indictment, and as an affirmative defense sets up the plea of an *alibi*, which is, that he was at some other place than that at which the crime was committed at the time it was committed, and for that reason could not have committed the crime. For instance, if A is charged here with having committed a crime in the city of Columbia to-day, and he can show that he was in the city of Greenville at the time of the commission of the crime by the preponderance of evidence, then that is held in law to be a good plea, for the reason that it is impossible for one man to be in two places at one and the same time, and that being the case, he could not have committed the crime unless he was present;' in that the said language was misleading to the jury, indicating to them that, in order to make out the defense of an *alibi*, the defendant should prove that he was in some other place than Columbia, and he thus violated the constitutional provision prohibiting a charge upon the facts." It seems from the phraseology of this exception that this part of his Honor's charge is considered objectionable by reason of the hypothetical case he selected to illustrate his views of the law on this subject—*alibi*. By section 26 of article V. of our present Constitution it is made the duty of the Judge to declare the law—"*but shall declare the law.*" In *Norris* v. *Clinkscales, supra*, this Court held that a Circuit Judge was debarred by the previous provision of section 26 of article V. of our Constitution from the use of the testimony itself in any cause pending before him in declaring the law of the case so pending, but that reference might be had to a hypothetical state of facts for this purpose. This is all that the Circuit Judge has done, and in doing so he has committed no error.

The 5th ground of appeal is as follows: "5. For that his Honor erred in refusing to charge the defendant's second request to charge." This second request to

charge was as follows: "A reasonable doubt is 'such a doubt as, after the entire comparison and consideration of all the evidence, leaves your minds in that condition that you cannot say you feel an abiding conviction of the truth of the charge to a moral certainty,' or a doubt for which you can give a reason." The refusal of the Circuit Judge was couched in these words: "No. 2 is refused, for the reason that all the defendant is entitled to, under the law, is the instruction that the State must prove every material fact in the case beyond a reasonable doubt, and they cannot convict if they have a reasonable doubt as to any material fact in the case. In other words, the phrase 'reasonable doubt' is self-explanatory." In his general charge, the Circuit Judge said: "The defendant has requested that I should charge what is a reasonable doubt. I have refused to charge that, Mr. Foreman and gentlemen, for several reasons. One is, I could not adopt the definition that defendant's counsel submitted; and another reason is, that I do not think it is necessary to charge you more than that the defendant is entitled to the benefit of a reasonable doubt. I am free to confess that the law books are full of definitions of judges in their attempt to define what a reasonable doubt is; but I prefer to charge the jury simply that the defendant is entitled to the benefit of a reasonable doubt, assuming that you understand the English language, and that the term, the phrase, 'reasonable doubt,' is self-explanatory. Now, one of the definitions is, that it is a doubt growing out of the evidence, for which you can give a good, a substantial, reason. That is not any nearer to a definition of a reasonable doubt than we started with. Another is, it is a doubt growing out of the evidence, or a lack of evidence, for which a substantial reason can be given. That is no nearer to a definition. Another is, it is an honest hesitation of the mind growing out of the evidence, or for the lack of evidence, and not a fanciful doubt but a substantial doubt. This puts you no nearer a definition of a reasonable doubt. So I prefer, Mr. Foreman and gentle-

men of the jury, to leave it to a reasonable jury to say whether they entertain a reasonable doubt." We apprehend that, after the Circuit Judge had given the jury the benefit of what others had said in their efforts to accurately define the meaning of this phrase, "reasonable doubt," he was entirely just to himself and to the law in saying that the phrase itself was "self"-explanatory. This ground of appeal is dismissed.

The 6th ground of appeal is as follows: "6. For that his Honor erred in refusing to charge the defendant's 4th request to charge," which was, "the weight and effect of direct evidence depends mainly upon the credibility of the witnesses; while the weight and effect of the indirect facts in evidence depend not only on the credibility of the witnesses but upon the correctness of the inferences or hypotheses drawn from or based upon such facts; in addition to the truth of the indirect facts or circumstances in evidence, then inferences and deductions are essentially involved, liable to numerous causes of fallacy, some of them inherent to the nature of the mind itself. So that while the number of mistaken judgments from direct testimony is comparatively small, the inferences to be drawn from indirect testimony are almost infinite in variety and number." The Circuit Judge used this language in declining this request: "No. 4 is refused, for the reason that the jury are the sole judges under the Constitution of the effect and weight of all evidence, either positive or circumstantial; and to charge in the language of this request would, in effect, be depriving the jury of their prerogative." It is patent that in this request to charge there is involved an ingenious effort to poison the minds of the jury against a conviction based upon circumstantial evidence, as opposed to or based upon direct evidence. Indeed, if we may be pardoned the observation, there is an effort here to embark the jury upon that difficult task of an analysis of the effect of testimony as metaphysicians, and this task is somewhat

beyond the powers of the ordinary juror. The Circuit Judge did not err even from his own standpoint.

The 7th ground of appeal is in these words: "7. For that his Honor erred in refusing to charge the defendant's 5th request;" which was, "In this case there has been introduced no positive or direct testimony of any fact, except the killing of the deceased, and all the facts in evidence relied upon by the State as tending to criminate the defendant are of an indirect and purely circumstantial nature." This request to charge was refused by the Circuit Judge, because if he had so charged it would have been in violation of section 26 of article V. of our State Constitution. An inspection of the language of the request shows this to be true. Let the exception be overruled.

We will next consider the 6th, 7th, 8th, 9th, and 10th grounds of appeal, as they all relate to circumstantial evidence. We will first quote these requests to charge, and then the language of the Judge's charge: "6. In determining the weight and degree of conclusions to be given to circumstantial evidence in judicial trials, certain rules or maxims of the law of evidence have been adopted for the guidance of the jury. 7. In order to justify the inference of guilt from circumstantial evidence in criminal cases, first, each and every one of the inculpatory facts from which such inference is drawn must be proved fully, clearly, and to a moral certainty. If you entertain a reasonable doubt as to any such material facts, it is your duty to find a verdict of not guilty. 8. Secondly, in order to justify the inference of guilt from circumstantial evidence in criminal cases, you must be further satisfied that every material fact or circumstance from which such inference is drawn is consistent with every other fact or circumstance, and the guilt of the accused. For as all things which have happened were necessarily congruous and consistent, so it follows that if any established material fact or circumstance be irreconcilable with the guilt of the accused, such incongruity and inconsistency is sufficient to negative such guilt,

even though such guilt coincide and agree with all other
facts and circumstances to the minutest extent.    So that if
you find from the evidence that any material fact from
which the inference of guilt is drawn is inconsistent with
any other such material fact, or is inconsistent with the
guilt itself, I charge you it is your duty to find a verdict
of not guilty.    9. Thirdly, in order to justify the inference
of guilt from circumstantial evidence in criminal cases, you
must be further satisfied that the facts and circumstances
from which such inference is drawn are of a conclusive na-
ture and tendency.    The question for you to decide is not
whether the accused is probably guilty of the offense
charged, but the facts and circumstances must indicate his
guilt to a moral certainty; and even if you believe from the
evidence that the facts and circumstances established that the
accused is *probably* guilty, but you further believe from the
evidence that such probability falls short of moral certainty,
then I charge you it is your duty to find a verdict of not
guilty.    10. Fourthly, in order to justify the inference of
guilt from circumstantial evidence in criminal cases, the
inculpatory facts and circumstances from which such infer-
ence is inferred must, to a moral certainty, actually ex-
clude every hypothesis but that of the guilt of the accused,
must to a moral certainty be incompatible with innocence,
and incapable of explanation upon any other reasonable
hypothesis than that of guilt.    Such evidence is always
insufficient where, assuming all to be proved which the evi-
dence tends to prove, some other hypothesis may still be true;
so that if you can believe from the evidence that the facts
and circumstances established do not actually exclude
every hypothesis but the guilt of the accused, or are incom-
patible with his innocence, or can be explained upon any
other reasonable hypothesis than that of his guilt, I charge
you it is your duty to find a verdict of not guilty." The
Circuit Judge refused to charge these requests in the lan-
guage of the same, but charged in these words: "This is
what I conceive to be the law of this case with reference to

the test of circumstantial evidence.  The test of the suffi-
ciency of circumstantial evidence in a criminal case is not
whether it produces as full a conviction as would be pro-
duced by the positive testimony of a single creditable wit-
ness, but whether it satisfies the minds of the jury to the
exclusion of every reasonable doubt.  It is not necessary
that it should demonstrate the guilt of the accused beyond
the possibility of innocence, but it must exclude to a moral
certainty every other hypothesis but that of guilt.  I charge
you that to be the test, the rule, with reference to circum-
stantial evidence.  Each fact in the chain of circumstances
must be proved by competent evidence, and each fact must
be consistent with other facts in the case, and with the
main fact sought to be proved.  Now, for instance, the facts
proved must be consistent with each other, and point di-
rectly to the guilt of the accused.  If they point to the
guilt of some one else, then the chain of circumstantial evi-
dence would not hold, because it must point to the guilt of
the accused; and if it points to the guilt of the accused,
although circumstantial, with such certainty that satisfies
you, to a moral certainty, of the fact sought to be proved,
then it is your duty to act upon circumstantial evidence,
and find a verdict accordingly.  Now the chain of circum-
stantial evidence has been compared to an ordinary chain.
For instance, suppose that chandelier is suspended from a
chain; the strength of that chain is tested by the weakest
link in it—in other words, the chain will hold just so much
weight as the weakest link in that chain will bear, and as
soon as it gives way the chain gives way.  And so will the
chain of circumstantial evidence—the sufficiency of it is
tested by the weakest circumstance which is necessary to
make out the theory of the State.  Now, the question you
will ask yourselves is this: Do these facts and circum-
stances point so directly to the guilt of the accused as not
to admit of any reasonable doubt but that he is the guilty
party.  Are you morally certain, morally satisfied, that
these facts and circumstances, which have been discussed

in your presence so ably, point so directly to the guilt of
the accused as not to admit of any other reasonable hypoth-
esis than that of his guilt? If so, the theory of the State
has been made out, and it would be your duty to convict;
if you have got a reasonable doubt, the theory of the State
would not be made out, and it would be your duty to ac-
quit." It must be borne in mind that the presiding Judge
had explained the necessity which existed that the evidence
offered by the State should establish the *corpus delicti*, and
also that, adopting the language of the request of the de-
fendant, the Circuit Judge had previously defined the mean-
ing of circumstantial evidence. When the substantive and
vital principles which go to make up circumstantial evi-
dence in criminal cases are considered, it will be seen that
the Circuit Judge has correctly expounded them. We have
taken the pains to compare his statement of them critically
with the maxims on this subject embodied in the works of
Mr. Starkie on Evidence, as found at pages 570 to 574, in-
clusive, of his first volume, and they have stood that test.
A careful comparison of the requests to charge with the
charge itself will show that the Circuit Judge has incorpo-
rated every idea therein; he has, wisely, we think, avoided
the prolix presentation of these ideas as found in the re-
quests to charge. All that a Circuit Judge is required to
do, in passing upon requests to charge, is to give, "clear
cut," the principles therein embodied, choosing his own
time and words in so doing. There is a living reality im-
parted to a charge when the Judge, naturally and in his
own words, presents the vital principles of law which are
considered important for the jury to know in a given case.
In a solemn issue of life and death, what a terrible respon-
sibility to the accused, and also to society, does the Circuit
Judge bear! These exceptions are overruled.

The 13th ground of appeal is involved in what we have
just considered, and needs no further attention.

The 14th ground of appeal is evidently based upon a mis-
apprehension by the appellant of what was held by the Cir-

cuit Judge, for upon examining the "Case" we find the presiding Judge did charge that request, which was the 13th.

The 15th request to charge, relating as it does to defining a "reasonable doubt," has already been considered by us in passing upon the 5th ground of appeal.

The 16th and 18th grounds of appeal allege error in his Honor, the Circuit Judge, in refusing to grant the 15th and 17th requests to charge. These requests to charge insisted, in effect, that it was the duty of the State to prove *a motive* in the prisoner for committing the homicide. The Circuit Judge held that it was not necessary to prove a motive. *State* v. *Coleman*, 20 S. C., 441; *State* v. *McIntosh*, *supra*, show that he did not err in so holding.

The 17th ground of appeal is in these words: "17. For that his Honor erred in refusing the defendant's 16th request to charge," which was in these words: "16. The mere fact that a party so situated that an advantage would accrue to him from the commission of a crime, amounts to nothing, or next to nothing, as a proof of his having committed it." As to this request the Circuit Judge said: "No. 16 is refused, for the reason that I fail to see wherein this request has any bearing on the case, and to charge the same might tend to mislead or confuse the jury." The Circuit Judge was quite right in this decision, if the request to charge embodied an abstraction. This Court has repeatedly held that abstract propositions of law need not be charged by the Judge even if requested so to do. The jury was only empanelled to try the issues of that prosecution, and it might tend to confuse their minds to have fanciful questions injected into the solemn charge of the presiding Judge. Let this exception be overruled.

The 19th ground of appeal is as follows: "19. For that his Honor erred in refusing to charge the defendant's 18th request to charge," which was in these words: "18. Of all kinds of exculpatory evidence that of an *alibi*, if clearly established by unsuspected testimony, is the most satisfactory and conclusive. This defense, if the

element of time be definitely and conclusively fixed, and the accused be shown to have been at some other place at the time, is absolutely incompatible with, and exclusive of, the possibility of the truth of the charge." The Circuit Judge had already, as we have heretofore quoted, sustained the 11th request to charge on the subject of an *alibi*, and in his general charge had set forth the principles of law governing such a defense. He, therefore, had substantially already charged this request. It is overruled.

The 20th ground of appeal relates to his Honor having refused to define the meaning of the phrase, "reasonable doubt." We have already passed upon this proposition. It is overruled.

So far as the 21st and 22d grounds of appeal are concerned, they are substantially presented in defendant's motion for a new trial. We find in the "Case" that his Honor correctly defined "murder" and "manslaughter," and, also, that his Honor did not confuse the minds of the jurors by his statement of the four forms in which their verdict might be rendered. Having already considered these matters, we decline to repeat our reasoning here. Let these exceptions be overruled.

Lastly, the 23d ground of appeal is in these words: "For that his Honor violated the constitutional provision in relation to charging upon the facts of the case in his manner of stating the testimony." We have patiently passed upon all the grounds of appeal, not calling to mind the generality of some of the exceptions, and the want of clearness in others. The office of an exception is well defined. The seriousness of this charge as it affects the appellant here, has caused us, of our own motion, to overlook some of these matters, but we refuse to consider this exception in its form. There is no reference to any particular charge of the presiding Judge touching the facts that is considered by the appellant as violative of the constitutional provision inhibiting Circuit Judges from charging juries upon questions of fact, and this Court certainly

cannot be expected to look over the entire charge of the Judge to ascertain if he has done so. This ground of appeol is dismissed.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE GARY concurs in the result.

MR. JUSTICE JONES *concurring.* I limit my concurrence in this case to the result only, because I do not approve wholly the grounds upon which the first exception is overruled. This exception seems to be overruled in a measure on the ground that *Norris* v. *Clinkscales*, 47 S. C., 517, announces a rule of law, that it is not a violation of art. V., sec. 26, of the Constitution, for a Circuit Judge, in charging a jury, "to repeat the testimony as to undisputed facts or admitted facts, or state their legal effect, or point out the different conclusions which might be drawn from them, or the inquiries they would naturally give rise to." I concurred in the result only, in *Norris* v. *Clinkscalez*, mainly because of this very language, which I thought, and still think, was not only unnecessary to the decision of that case, but was unsound. In almost every case before a jury there are admitted or undisputed facts, and the real contention very often is as to the proper inference or conclusion of fact to be deduced from undisputed facts, and it seems to me it would invade the province of the jury and violate the constitutional inhibition against charging juries "in respect to matters of fact," for a judge to charge a jury in respect to undisputed facts, pointing out the different conclusions which may be drawn from them, or the inquiries they would naturally give rise to. What inference of fact may be deduced from an undisputed fact, is a matter of fact, and is often the only fact in controversy. The cases which seem to support the language used in *Norris* v. *Clinkscales* were cases under the Constitution of 1868, and may all be explained by giving attention to the fact that, under that Constitution, judges were allowed to "state the

20—49

testimony." It is unnecessary in this case to say more on this point. I merely wished not to be committed to an indorsement of the doctrine alleged to be announced in the language quoted from *Norris* v. *Clinkscales.* Mr. Justice Gary did not sit in that case, and concurs merely in the result in this case, and I feel assured that a majority of this Court are not now prepared to indorse the language of *Norris* v. *Clinkscales,* quoted. That matter must be regarded as still open.

.Notwithstanding this, however, the first exception is properly overruled. The contention of the State in this case was that Aughtry murdered Oliver because of his lust for Oliver's wife. The defense was that Oliver was murdered for purpose of robbery by some one else than Aughtry, and sought to establish an alibi for Aughtry. It was manifest, therefore, that the language of the Circuit Judge complained of could not have been in the slightest degree prejudicial or harmful to the defendant, could not be regarded in any way as a charge in respect to matters of fact, but was merely a statement of the admission of counsel for defendant, tending to limit the issues of fact before the jury.

Petition for rehearing refused May 1st, 1897,

Per Curiam. The petition for a rehearing in this case is based solely upon the ground that this Court, in its opinion affirming the judgment, had overlooked the fact that certain testimony, the admission of which constituted the basis of the 27th exception, was not objected to when it was offered, whereas the "Case" shows that such testimony was, in fact, objected to; and, though irrelevant in the shape in which it appeared, as stated in the opinion, the Court did not go on to consider whether the reception of such irrelevant testimony was hurtful to the appellant, as it is claimed should have been done. To understand precisely the question made by this petition, it is necessaay to reproduce here exactly what occurred in the Court below when the testimony was offered, as it appears

in the "Case" as well as in the petition for rehearing, as follows: The witness, E. B. Moore, testified that the appellant said, after exhibiting a note, "I'll be damned if this aint a ticklish point; she wants me to go to her room (objected to.) I'll be damned if I don't, if I have to kill him." The witness immediately added, "I have no idea who he meant; he said it was his girl; didn't know he was keeping a woman." From this it will be seen that while objection was taken to the first part of this testimony—that which contained the invitation from the woman to go to her room— which might very well be regarded as irrelevant, and not hurtful to appellant, yet there was no objection to that part of the testimony expressing a determination "to kill him;" who, does not appear from this particular testimony, which was much more likely to prove hurtful to the appellant, as it might, when connected with other testimony in the case, have been regarded as a threat to kill the deceased, if it became necessary to carry out the lustful desires of appellant. It is, therefore, very easy to see how the Justice who prepared the opinion would have felt justified in using the language to which exception is taken in the petition for rehearing. For, while the testimony as to the woman's invitation to go to her room, might be regarded as irrelevant, yet the subsequent testimony, practically showing a threat to take the life of some one, not being objected to, not only became competent, but might, when connected with other testimony in the case, become entirely relevant to the issue on trial.

It is manifest, therefore, that no material fact or principle of law has either been overlooked or disregarded, and hence there is no ground for a rehearing.

This case has received the careful consideration of this Court upon the statements found in the "Case" as prepared for argument here, as all other cases are, and must be, considered; and when we find, as we do find in this case, that a certain portion of the testimony which has been objected to, is irrelevant to the issue on trial, standing by itself, but

which might become entirely relevant when connected with other testimony in the case, it is sufficient to hold, as was held, that such testimony, standing alone, is irrelevant, without proceeding to inquire whether such irrelevant testimony was calculated to injure the appellant, where, as in this case, it appears, from a careful re-examination of the case, that there was other testimony which, if believed, would tend to render the testimony objected to relevant. As to the other portion of the testimony which the "Case" does not show was objected to, and which thereby became competent, it is very easy to see how, when connected with other testimony in the case, it would become entirely relevant.

It is, therefore, ordered, that the petition for a rehearing be dismissed, and that the stay of the remittitur heretofore granted be revoked, and that the remittitur be sent down forthwith.