15822

**STATE v. BAKER**

(37 S. E. (2d), 525)

*Messrs. L. B. Haselden,* of Dillon, and *W. B. Norton,* of Marion, Counsel for Appellant,

*Solicitor S. S. Tison,* of Bennettsville, Counsel for Respondent,

March 29, 1946.

MR. ASSOCIATE JUSTICE OXNER delivered the Opinion of the Court.

Upon an indictment charging him with (1) breaking and entering a house with intent to steal, (2) grand larceny, and (3) receiving stolen goods, knowing the same to have been stolen, appellant, Eddie Baker, a Negro, was convicted on the first and second counts and sentenced to imprisonment

for a period of eight months. At the close of the State's testimony, his counsel moved for the direction of a verdict of acquittal. After the jury returned its verdict, appellant moved for a judgment of acquittal *non obstante veredicto* and failing in that, for a new trial. All of these motions were refused and this appeal followed.

It is first contended that the trial Judge erred in refusing to direct a verdict of acquittal on the ground that the testimony was insufficient to support a conviction. The determination of this question necessitates a brief review of the evidence.

Brown McCollum, a farmer residing in Dillon County, had approximately 580 bushels of oats stored in an unoccupied tenant house. On or about Saturday, July 15, 1944, someone pried open a window that was nailed, entered the house, and removed a quantity of oats. High weeds around the house were found "mashed down at the window." It rained during that day and night. The theft of the oats was first reported to Mr. McCollum on the following Monday morning, at which time he, along with a deputy sheriff of Dillon County, started an investigation. The tracks of some vehicle with rubber tires were seen in a farm road about ten or fifteen steps from the tenant house and between this point and the window of the house there were some oats scattered on the ground. The tracks showed that they were made when the ground was wet and that there was a light shower after the tracks were made. On account of the rain it was impossible to determine the tread of the tires. On the following Wednesday, four days after the oats were stolen, the deputy sheriff searched a barn on a farm rented by appellant as a sharecropper, which was located about five miles from the farm of McCollum, and found eight full sacks of oats and another partly filled. He then went to a nearby field where appellant was working and inquired about the oats. Appellant replied that he had bought them on the preceding Saturday night from another Negro, giving his name, who lived at Rowland, North Carolina. Thereupon the deputy

sheriff procured a warrant for the Negro named by appellant and proceeded to Rowland to arrest him, but after a diligent search in that community was unable to find any Negro by that name.

Mr. McCollum, in describing the oats stolen from his tenant house, testified as follows: "Q. Describe the kind of oats you had, how you could tell them from other oats? A. Well, the oats in this house, I was gathering them kind of late about the last of June, and it was spring oats, they did not mature so well, they were slightly colored and also had some weeds in them that had dried up. We had to leave some of them out a day or two and they gathered them and let the sun dry them out and the weeds curled up. Q. Was that usual for your community, gathering oats that late? A. I don't know of anyone else that gathered any around that time."

The deputy sheriff carried the sacks of oats found in appellant's barn to Mr. McCollum's house. The oats and sacks were still wet. On direct examination, Mr. McCollum testified as follows with reference to the resemblance of these oats to the oats stolen: "Q. Explain to the jury how the oats in those sacks compared to the oats that you lost? A. By having samples from the house and taking a sample out of the sacks they looked identical to me. Q. In what way? A. Well, they had those same little curled up weeds and they were damaged and were slightly dark and they were small, I mean the size of them was about the same." And on cross examination, as follows: "Q. The only thing you know is you missed some oats and that they brought some oats back that looked like yours? A. Well, when you put the two together, they were identical. Q. But you could not positively swear that nobody else besides yourself had that sort of oats, especially if they had a particular weed seed in them and if they were spring oats and were slightly damaged, that is not much of an indication, is it? A. No. Q. So it would be hard to swear positively that they were your oats? * * * A. I believe they were."

Mr. McCollum was not asked to estimate the quantity of oats removed from his tenant house. He testified, however, that "you could see where they had shoveled out of the pile or taken out of the pile."

The deputy sheriff's testimony corroborated that of McCollum with reference to the resemblance between the oats stolen and those taken from the barn of appellant. This officer further testified that he found some oats of the same character scattered in the car of appellant. With reference to the automobile tracks, he testified as follows on cross examination: "Q. And you did not see any resemblance between his (appellant's) automobile tires and the tires that you saw there in the road? A. I could not tell anything about it because the ground was wet from the time the tires were there."

The foregoing is a summary of the testimony offered by the State. The appellant testified that on the Saturday night of the alleged theft he was stopped by two men who had a truck bearing a North Carolina license tag parked on the side of the road with a flat tire; that after assisting them in fixing the tire, they offered to sell him nine bags of oats, which he finally bought for about half price; that the two men, one a Negro and the other an Indian, then carried the oats in this truck to his barn; and that he had never seen the Negro before, but had previously seen the Indian, who lived near Rowland, North Carolina, once or twice.

If the evidence was sufficient to identify the oats found in appellant's possession as those stolen from the prosecuting witness, it was incumbent upon appellant to give some satisfactory explanation of his possession consistent with his innocence; otherwise, the law presumes him to be the thief. *State v. Winter,* 83 S. C., 153, 65 S. E., 209; *State v. Rowe,* 122 S. C., 448, 115 S. E., 586; *State v. Campbell et al.,* 131 S. C., 357, 127 S. E., 439; *State v. Roof,* 196 S. C., 204, 12 S. E. (2d), 705. Appellant recognizes this well-established principle, but earnestly contends that the evidence as to identity is insufficient.

Accepting as true the testimony of the State, as we are required to do in passing on this question, it was sufficient if believed by the jury, to establish the following circumstances: The oats stolen had unusual distinguishing features; they were removed while it was raining; appellant, about the same time, received some oats with the same distinguishing features, which were wet; a few oats similar to those stolen were found scattered in appellant's car, no one bearing the name given by appellant as that of the person from whom he bought the oats could be found.

It appears to be well settled that the degree of proof as to the identity of the stolen goods depends in some measure on the time which elapsed between the commission of the theft and the receipt of the property by the accused. If the possession be not recent, stricter proof of identity is required than in the case where the possession is very recent. *State v. Slack,* 1 Bailey, 330; *Gravely w. Commonwealth,* 86 Va., 396, 10 S. E., 431.

In view of the peculiar earmarks of the oats stolen in the instant case, the recency of the possession, and all the surrounding circumstances, we think the evidence was sufficient to warrant the jury in drawing the conclusion that the oats found in appellant's possession were those stolen from the prosecuting witness. The motion for a directed verdict of acquittal was, therefore, properly refused. Of course, it was the function of the jury to pass upon the credibility of the witnesses and the weight to be given to the testimony. That body was at liberty to conclude that the identity of the property had not been established beyond a reasonable doubt or, if established, that the accused had given a satisfactory explanation of his possession consistent with his innocence. We are only holding that the testimony was sufficient to justify the submission of these questions to the jury.

We have carefully considered the cases relied on by appellant, but in none of them do we find that the property stolen had characteristics or earmarks as strong or outstanding as those possessed by the property stolen in this case.

For example, in *State v. Hamilton,* 138 S. C., 164, 136 S. E., 391, relied on by appellant, Camel and Chesterfield cigarettes were found in defendant's possession, but there was no way to distinguish these from those stolen or other cigarettes of the same brands; in *State v. Martin et al.,* 118 S. C., 21, 110 S. E., 78, lard and cakes were stolen, but neither had any distinguishing features.

It is next contended that the trial Judge erred in failing to charge the law governing circumstantial evidence. There was no request that he do so. But, irrespective of a request, the trial Judge is required to instruct the jury as to the rules governing circumstantial evidence where the State depends solely upon this class of evidence to support a conviction. *State v. Bunyon,* 137 S. C., 391, 135 S. E., 361; *State v. Rickenbaker et al.,* 187 S. C., 448, 198 S. E., 43. We think in this case the State depended entirely upon circumstantial evidence to connect the accused with the theft and the trial Judge erred in failing to charge the rules applicable thereto. There is no evidence of a confession by the accused. He did not admit that the oats in his possession belonged to the prosecuting witness. The identity of the stolen goods was a hotly contested issue and the evidence offered by the State to prove identity was of a circumstantial nature. See annotation in 69 L. R. A., 193. This contention of appellant must be sustained.

Several other questions are raised by appellant's exceptions. As there must be a new trial and on the next trial the evidence may not be the same, we think it better not to pass upon the remaining questions and intimate no opinion thereabout.

Judgment is reversed and a new trial granted.

Mr. Associate Justice Stukes and Mr. Acting Associate Justice J. Henry Johnson concur. Mr. Associate Justice Taylor and Mr. Acting Associate Justice G. Duncan Bellinger dissent.

Mr. Acting Associate Justice G. Duncan Bellinger (concurring in part and dissenting in part): I find my-

self unable to agree in full with the opinion of Mr. Associate Justice Oxner for the reasons hereinafter set forth. I do, however, agree that if the facts in this case had made it one that should have been submitted to the jury, the learned Trial Judge committed error in not instructing the jury on the law of circumstantial evidence.

In order that my opinion be fully understood, it is necessary for me to review somewhat fully certain evidence in the case, and the motions made thereon by the defendant.

At the close of the State's case the defendant moved for a direction of verdict in his favor upon the grounds that the State had failed to prove the *corpus delicti*, and this motion having been refused, upon a verdict coming in finding the defendant guilty of housebreaking and grand larceny the defendant moved for judgment of "Not Guilty" *non obstante veredicto*. This motion was also refused.

The State relied solely upon circumstantial evidence to prove that the property in the possession of the defendant was the property of the prosecuting witness; and that the defendant had procured them by breaking into the building of the prosecuting witness and removing them therefrom.

The circumstantial evidence relied upon may be summarized as follows:

The prosecuting witness had planted his oats in the spring and they were gathered in June; the oats gathered by him were immature, dark in color, and had dried weed leaves mixed among them. It would appear that the immaturity of the oats, as well as the color, was due to the late planting and the time of the year that they were gathered. On the night it is alleged that the oats were stolen, there had been a light rain. The oats found in the possession of the defendant were in bags and were wet. The oats found in the possession of the defendant were not matured, were dark in color and had some dried weed leaves mixed therewith. The prosecuting witness testified that he had a quantity of loose oats in his building; that he had weighed these oats before he suffered the loss of them, and that he had on hand about

580 bushels; that after a part of the oats were stolen from him he did not weigh the balance remaining and did not know the quantity that was stolen from him. He could have very easily, by weighing the remaining oats, have determined what amount was stolen from him so that there could be a comparison between the quantity of the oats in the possession of the defendant with the amount supposed to have been stolen. There was a complete lack of evidence to show that the quantity of oats alleged to have been stolen from the bulk had not been used to feed the stock belonging to the prosecuting witness.

The evidence of Deputy Sheriff Sawyer shows that an automobile had been driven near the building containing the oats; that there was evidence at or near the spot of where an automobile had stopped; that because of the wet condition of the soil the wheel of the automobile had spun because of the fact that the tires on the automobile, in which it was alleged the oats were hauled away, were smooth and could not grip the ground. The Deputy Sheriff had an opportunity to examine the tires on the defendant's car and see whether or not the tires on his car were worn and smooth, and whether or not they could make an impression in the wet earth similar to that made by the automobile tracks found in the vicinity of the building from which the oats were taken. If the ground was wet enough to have left the impression of an automobile tire, it would have contained footprints, which could have been compared with those of the defendant. There is no evidence that footprints were found in the vicinity of the building from which the oats were alleged to have been taken.

The further evidence in the case is that the defendant lived some four or five miles distant from the place where it is alleged the property was stolen. The testimony further shows that the defendant had not been in the community for several years prior to the time that the defendant is alleged to have committed the crime charged against him.

The oats found in possession of the defendant were contained in cloth bags that had formerly contained fertilizer. The prosecuting witness testified that the bags were not his and did not come from his premises, as he used a different brand of fertilizer from that shown by the markings on the bags in which the alleged stolen oats were contained.

The prosecuting witness and the Deputy Sheriff relied upon their identification of the oats in the possession of the defendant, as having been stolen from the prosecuting witness, by the resemblance of the oats; that is, they were immature in size, dark in color and had mixed among them dried weed leaves. The prosecuting witness owned oats of this description. The prosecuting witness said that he could not swear that the oats in the possession of the defendant were a part of his oats, but that he believed them to be. The only testimony in the case as to whether or not there were other oats of this description gathered in the community has no probative value. The evidence is that the witness did not know whether there had been similar oats gathered in the community.

It cannot be said that if others had planted their oats in the spring and gathered them in June the same result would not have occurred to their oats and have given to them the same appearance as those in the possession of the defendant. Nor can it be said that dried weed leaves existed only in the crop of oats belonging to the prosecuting witness, and that no other oats, when gathered, had dried weed leaves mixed with them. In short, the condition of the oats described by the prosecuting witness was not such a condition that another farmer could not have had the same results with his oats. Nature had brought about this condition, and that was something over which man had no control. It could have and in all probability did result in other farmers having a like experience with their oats.

In larceny the *corpus delicti* consists of two elements: (a) That the identical property charged in the indictment was lost by the owner, and (b) that it was lost by a felonious

taking. The term *"corpus delicti"* includes the showing that the specific kind of property alleged in the indictment was lost by the owner and that somebody's criminality was responsible for the loss. *State v. Roof,* 196 S. C., 204, 12 S. E. (2d), 705.

In the case at bar, the *corpus delicti* charged in the Bill of Indictment is that the defendant (a) did break into the building of the prosecutor with intent to steal therefrom in the nighttime; (b) and did steal and carry away the oats in question; (c) that he did receive the oats in question knowing them to have been stolen theretofore. A conviction of the defendant on any of the counts in the indictment, rested solely upon the identity of the oats in the possession of the defendant as being the property of the prosecuting witness. There is ample evidence to show that the building had been broken into. The State relied solely upon circumstantial evidence to sustain the charges made in the Bill of Indictment.

It is true that the *corpus delicti* may be proven by circumstantial evidence, but before a conviction in any grade is warranted the elements of the *corpus delicti* must be proved beyond a reasonable doubt. Until this is done, the defendant is not required to answer a charge against him until the prosecution offers sufficient evidence to establish the fact that the crime charged has been committed.

Special care should be exercised as to the *corpus delicti* and there should be no conviction except where that part of the case is proved with particular care and certainty, that is, beyond a reasonable doubt—to a moral certainty.

Our Court has laid down the rule to be followed where the State relies solely upon circumstantial evidence to prove its case. As was said in *State v. Kimbrell,* 191 S. C., 238, 4 S. E. (2d), 121, 122, and re-affirmed in *State v. Dornberg,* 192 S. C., 513, 7 S. E. (2d), 467: "Where it is undertaken by the prosecution in a criminal case to prove the guilt of the accused by circumstantial evidence, not only must the circumstances be proven, but they must point conclusively— that is, to a moral certainty—to the guilt of the accused;

they must be wholly and in every particular perfectly consistent with each other, and they must further be absolutely inconsistent with any other reasonable hypothesis than the guilt of the accused. *State v. Langford,* 74 S. C., 460, 55 S. E., 120; *State v. Aughtry,* 49 S. C., 285, 26 S. E., 619; *State v. Hudson,* 66 S. C., 394, 44 S. E., 968."

Can it be said in the present case that the circumstances relied upon to identify the property in question, has met the requirements where circumstantial evidence is relied upon to prove the most important fact? Indeed, the foundation upon which the case stands or falls, namely, that the oats in the possession of the defendant *were* the oats, *or a part* of the oats stolen from the prosecuting witness, has not been established by the State. It is true that the evidence in this case, touching upon the description of the oats, raises suspicion, conjecture and possibility, but it would be insufficient foundation for a verdict. The evidence here did not exclude every other reasonable hypothesis than that of the defendant's guilt.

Because of the insufficient and unsatisfactory character of the evidence relied upon by the State to establish the *corpus delicti*—the weakness of the evidence relating to the identity of the goods alleged to have been taken from the prosecutor —the evidence was insufficient to submit the case to the jury.

The State had no evidence, direct or circumstantial, unless the oats in possession of the defendant could be shown to be a part of the oats stolen from the prosecuting witness, to convict the defendant with the breaking into the building from which oats were missing. The State then proceeded upon the assumption that this fact has been proven, and in order to convict the defendant of housebreaking, relied upon the proposition of law that the recent possession of goods stolen or feloniously taken from a house which had been broken into, unless satisfactorily explained, will authorize the conviction for housebreaking and larceny. Under the well-settled rule in regards to circumstantial evidence, it was absolutely essential to prove the identity of the oats alleged

to have been stolen—and that beyond a reasonable doubt, that is, to a moral certainty—before the presumption of law as to the possession of the oats in question presumes the possessor to be the thief, could be applied in this case. The State having failed to sufficiently identify the oats in the possession of the defendant as the property of the prosecuting witness, there was no evidence to connect the defendant either with the breaking of the building or of the larceny of oats therefrom.

The evidence, I confess, is sufficient to raise a violent suspicion that the defendant is guilty. But considering all of the evidence in this case it cannot be said that the circumstances relied upon to prove the guilt of the accused have been proven. Certainly it cannot be said that the circumstances relied upon "point conclusively—that is, to a moral certainty—to the guilt of the accused." Likewise, it has not been shown that the circumstances were "wholly and in every particular perfectly consistent with each other" and were "absolutely inconsistent with any other reasonable hypothesis than the guilt of the accused."

This is not a case of conflicting evidence where the jury have decided the conflict, and this Court will not disturb the findings. There was an absolute lack of competent evidence, upon which to have submitted the case to the jury, and hence to support the verdict of guilt.

Upon the whole case, I am of the opinion that upon the coming in of the verdict of guilty in this case, that the learned Trial Judge should have granted the motion for judgment of "Not Guilty" *non obstante veredicto*.

The maxim of the law is that it is better that many guilty should escape than that one innocent should suffer, and while I am far from expressing the opinion that the person involved is innocent, I think it consistent with the rules by which this Court is governed in like cases that the defendant should have the benefit of the doubt. The judgment of the lower Court should be reversed and the case re-

208

manded, with instructions to enter a judgment for the defendant, and that he be discharged unless there are other charges pending against him.

MR. ASSOCIATE JUSTICE TAYLOR concurs.