**Billy Joe LOVE, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–12520.**

Criminal Court of Appeals of Oklahoma.
Dec. 11, 1957.

Ritter & Collins, Ardmore, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, Presiding Judge.

Plaintiff in error, Billy Joe Love, defendant below, was charged by information in the District Court of Stephens County, Oklahoma, with the crime of grand larceny by means of the theft of 1,500 pounds of iron pipe thread protectors, valued at $125, in the possession of one Clarence F. Allred. He was tried to a jury, convicted, but the jury was unable to agree on the punishment

which the trial court fixed at two years confinement in the state penitentiary.

Briefly, the facts are as follows: The complainant, in connection with the operation of the business of the J. G. Beard estate at Duncan, Oklahoma, had stored on a storage lot 1,500 pounds of iron protectors, used to protect the threads of oil field pipe, valued at $125. Surrounding the lot was a wire fence. At about 6:30 a.m. on October 18, 1956, a watchman on a nearby premise saw a pale green 1954 Ford pick-up truck with worn side boards and a spare tire on each side thereof immediately back of the cab backed up to the fence of the complainant's premises. When the two men accompanying the truck saw the watchman, they quickly drove away, jostling some iron material in the truck that made a clanking noise at a rough place in the road. The truck left going in the direction of Ardmore, Oklahoma. The watchman reported the incident to Mr. Allred, Superintendent of the J. G. Beard estate. Investigation disclosed the truck had been backed over the fence into the lot and the pipe protectors had been removed therefrom. At the place where the truck had been, were heavy duty tire tracks in the moist sand with a diamond tread design, sharply etched, indicating the tires to be nearly new. There were also foot prints, some of shoes, and others of boots with walking heels. The Sheriff was notified and he suspected the pipe protectors had been taken to Ardmore. The description of the truck was broadcast over the police radio to the Ardmore police and such a truck was located on "C" Street in Ardmore, Oklahoma, at about 8:30 a.m., being driven by the defendant as he was going home. Investigation disclosed that the defendant had sold some pipe protectors on the same morning, October 18, to Mr. E. J. Bryant of the O. K. Iron and Metal Company, a salvage concern. The ticket covering the sale showed 1,500 pounds were bought from B. J. Love for $90. Officer Brooks arrested the defendant on the radioed description as hereinbefore set forth. An investigation showed the color, make, model, the spare tire locations, and

tire treads of the defendant's truck all fit the description of the pickup truck which drove away from the scene of the theft in Duncan, Oklahoma. The tires were also nearly new. The defendant was permitted to go on home before being taken to the police station. When he arrived home, he was permitted to go inside the house and change his clothes, unaccompanied by the officers. When the defendant was arrested, he was wearing boots with walking heels, but when he came out of the house, he was wearing street shoes. The boots were never found, thereafter.

The defendant was not searched before arriving at the police station. At the police station, he was relieved of his personal belongings, among which was his billfold in which was a note on what appeared to be an old envelope. It read:

"10-17-56
Sold to Billy Joe Love 1500 lb P at 4¢ lb.
/s/ Robert Andrews"

The defendant told the officers he had bought the pipe protectors on the evening of October 17, 1956, from a man he had never seen before or since and did not know, at Healdton, Oklahoma, which is between Duncan and Ardmore. When he was being returned to Duncan by the officers, on going through Healdton the Sheriff asked him to point out the place where the alleged purchase of the pipe protectors was consummated. He then denied the transaction took place in Healdton, but told the officers it was in Wilson, Oklahoma, a short distance away. The evidence of the officers further reveals that he first told them he paid $40 for the 1,500 pounds of pipe protectors. Then later he said, so they testified, it was 1,600 pounds for which he paid two twenty dollar bills and a ten dollar bill. These statements are contrary to the bill of sale, purportedly from Robert Andrews, which fixed the price at $60.

One of the state's witnesses positively identified the protectors which the defendant had sold as those which had been stolen and another said they looked like the ones stolen.

The defendant testified he bought the protectors from a man in Wilson and paid him $45 for them. He said the purchase was made on October 17. He denied he had been in Duncan prior to his arrest. He admitted his truck would run at a maximum speed of 60–65 miles per hour. The record discloses it is about 70 miles from Duncan to Ardmore. The defendant admitted he pled guilty to chicken stealing at the age of 19 years, some ten years previous, and received a suspended sentence. When asked to describe the man from whom he allegedly bought the pipe protectors, he said he was a tall, black headed man whose name he had forgotten but it was on the bill of sale. He admitted he cheated the supposed seller out of $15 when he only gave him $45 for the pipe protectors. It clearly appears from the record that the defendant would not have known how much the weight of the pipe protectors was until he had sold them and had them weighed at the salvage yard. On cross-examination he was asked if his wife had written the bill of sale which he denied.

■ The case was tried on June 10, 1957. None of the argument of counsel was preserved and the record discloses no exceptions were made to any of the purported argument at the time it was presented to the jury, and the trial court's ruling thereon. On June 20th, motion for new trial was heard, at which time it was contended by the defendant the Assistant County Attorney held up the bill of sale before the jury and argued it was in a woman's handwriting. The trial court observed that it was of the opinion neither counsel nor the court remembered exactly what was said. The court stated it was his recollection the note was held up to the jury and the County Attorney stated that anyone could see it was in a woman's handwriting. The court said the defendant's counsel objected and asked the same be excluded from the jury and the jury admonished. This the trial court refused to do and stated that the bill of sale was in evidence and was a proper matter for comment of both counsel. Under this record, we cannot pass on this question, since the record does not disclose the arguments were preserved or any exception was taken to this ruling by the trial court. Tucker v. State, 9 Okl.Cr. 587, 132 P. 825. The rule announced in Secondi v. State, 94 Okl.Cr. 381, 236 P.2d 507, as follows, is controlling:

"Where there is no proper record in the case-made of alleged improper remarks of the prosecuting attorney to the jury, this court will not consider the same."

■ It is contended the evidence is insufficient to support the conviction. The evidence of the theft by the defendant is entirely circumstantial. His explanation of his possession of property identified as recently stolen was contradictory and unsatisfactory. The property, being unmarked, was difficult of identification, but presented a question of fact for the jury. In Brinkley v. State, 37 Okl.Cr. 362, 258 P. 1071, 1072, theft of harness was involved. No one actually saw the theft of the property. The automobile in which the asportation was effected was traced by tire tracks as moving in a northerly direction across a field as it left the scene of the theft. Two days later, it was discovered at the defendant's mother's home, 25 miles north of the scene of the theft. The defense was that an inmate of the penitentiary left the harness at the place where it was found. The jury rejected this explanation. Judge Doyle, speaking for the court, commenting on the rejection by the jury said:

"Whether an explanation respecting possession of property recently stolen is reasonable or not is ordinarily a question for the jury, the same as any other question of fact, and a reasonable explanation will not necessarily lead to an acquittal. The truthfulness of an explanation of possession of stolen property, although uncontradicted, must be determined by the jury. Blumhoff v. State, 29 Okl.Cr. 97, 232 P. 862.

"Carefully considering the whole testimony in this case, we have no doubt of its sufficiency to justify the verdict."

In Skinner v. State, 56 Okl.Cr. 126, 34 P.2d 1079, 1080, a theft of turkeys was involved. Therein, Judge Chappell said:

"This court has held that possession of recently stolen property is not of itself sufficient to authorize conviction of the accused for the crime of larceny, but that possession of recently stolen property creates an inference of fact which, together with other incriminating circumstances, is sufficient to sustain a conviction. Bidwell v. State, 28 Okl.Cr. 1, 228 P. 614.

"This court has also held that the onus is on defendant to explain his possession of recently stolen property. Whitten v. State, 25 Okl.Cr. 447, 221 P. 115; Buford v. State, 27 Okl.Cr. 138, 225 P. 568; Foust v. State, 36 Okl.Cr. 390, 254 P. 982."

On the question of proof of identity of the stolen property, in State v. Baker, 208 S.C. 195, 37 S.E.2d 525, it was held:

"The degree of proof as to identity of stolen goods depends in some measure on time which elapsed between commission of the theft and receipt of the property by the accused, and if possession is not recent, stricter proof of identity is required than in case where possession is very recent."

This rule is particularly applicable in the case at bar, for less than three hours elapsed from the time of the theft until the arrest of the defendant, and his possession of the recently stolen property was established. Moreover, one witness positively identified the property herein involved.

We are of the opinion that the evidence herein presented a question of fact for the jury, and the same is sufficient to support the jury's finding.

The defendant complains that the rule was requested at the commencement of the trial and the Sheriff remained in the court room during all the trial proceedings. This was not objected to during the trial but appears to have been raised for the first time on the motion for new trial. We be-

lieve it is without merit and is controlled by the rule announced in Rhamy v. State, Okl.Cr., 307 P.2d 555:

"The exclusion of witnesses for state, at defendant's request, is not an absolute right in all cases, but rests in sound discretion of trial court, and this includes power to except one or more witnesses from operation of rule."

The judgment and sentence is accordingly affirmed.

POWELL and NIX, JJ., concur.