14712

STATE v. RICKENBAKER *ET AL.*

(198 S. E., 43)

*Messrs. Zeigler & Brailsford* and *C. T. Graydon,* for appellants,

*Mr. A. J. Hydrick, Solicitor,* for the State.

July 1, 1938.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

The indictment in this case charged the appellants with buying and receiving goods and chattels well knowing the same to have been stolen. Upon conviction and sentence, they appeal to this Court, and by their several exceptions raise four questions, stated by appellants to be:

"1. Should a verdict for the defendants have been directed upon the ground that the elements of the offense were not made out by the testimony?

"2. Should a verdict for the defendants have been directed as to the charge of receiving stolen goods of the value of more than $20.00?

"3. Was the remark made to the jury by the presiding Judge at the commencement of the recess hour reversible error?

"4. Was there error in the charge of the presiding Judge?"

The first two questions will be discussed together.

The testimony on behalf of the State was to the effect that the store of J. W. Collier near the southern incorporated limits of the City of Orangeburg was broken into on the night of January 25, 1937, by Mannie Griffin and Na-

thaniel Smith, Negro boys, who stole therefrom thirty-six cartons of cigarettes, twenty-eight cartons being of the better grades, and the remainder of the cheaper grades. The wholesale price of the better grades was $1.43 a carton, and the cheaper grades $1.06 a carton. These prices included the revenue stamps, State and Federal.

The appellant, A. H. Rickenbaker, conducted a filling station and small store near the City of Orangeburg, and the appellant, J. T. Rickenbaker, a brother of A. H. Rickenbaker, clerked for him. Near the place of business of A. H. Rickenbaker a Negro by the name of Osiah Slater also conducted a small filling station and store in a building rented from A. H. Rickenbaker, and in this store he had a "picalo" (also known as a "nickelodium"), and A. H. Rickenbaker and Slater divided the money out or this machine. There was a path leading from the rear of the Slater filling station to the filling station and store of A. H. Rickenbaker. The Negro boys hereinabove referred to approached Slater with reference to selling him cigarettes, and Slater in turn took the matter up with A. H. Rickenbaker, who told him he would take all the cigarettes he could get at seventy-five (75) cents for the higher priced cigarettes and fifty (50) cents for the lower priced ones, and if he was not at his store when he (Slater) brought the cigarettes, he (A. H. Rickenbaker) would arrange to leave the money there from them. When the Negro boys stole the cigarettes from Mr. Collier's store they put them in a crocus sack and hid them. The next night they took them to Slater's place, or to the back thereof, and went in and told Slater that they had some cigarettes. He had told the boys that he would give them $16.00 for the cigarettes and upon delivery of the cigarettes to him he went down the path with the cigarettes towards the store of A. H. Rickenbaker, was gone about twenty or twenty-five minutes, and when he returned gave the two Negro boys $16.00. Slater testified that he had a conversation with Mannie Griffin, one of the boys who stole the cigarettes, and as a result of this conversation

he saw A. H. Rickenbaker and told him that these boys had some cigarettes and asked him if he wanted them, and that A. H. Rickenbaker said he did at the price above stated. On the next night these boys came back to Slater's place of business, stating that they had the cigarettes and when he counted them they amounted to $16.00 at the price A. H. Rickenbaker had said he would pay for them; that with the exception of three cartons which Slater appropriated while on the way to deliver the cigarettes, he carried the cigarettes in a crocus sack over to the side door of the store of A. H. Rickenbaker where he delivered them to J. T. Rickenbaker and was paid $16.00, which he later turned over to the Negro boys; that on the next day, Wednesday, he asked Mr. A. H. Rickenbaker if he got the cigarettes and he said yes and that they were all right. When the cigarettes were delivered to J. T. Rickenbaker he did not count them, although he looked at them before paying the $16.00 to Slater. On Thursday, after Mr. Collier's store had been broken into, Mr. Collier asked A. H. Rickenbaker if anybody had offered him any cigarettes for sale and he answered in the negative and promised to let Collier know if any cigarettes were offered him. Both of the appellants deny any knowledge of the cigarettes or that Slater had delivered any cigarettes to them. We think there can be no doubt but that on the above testimony it was necessary to submit the case to the jury, and that the trial Judge could not have directed a verdict in their behalf.

The elements necessary to the commission of the crime of buying and receiving stolen goods, knowing them to be stolen, are: First, were the goods stolen; and, second, did the appellants receive them knowing them to be stolen and with a fraudulent intent? As to the first isue, there is positive testimony that the cigarettes were stolen, and that the appellants bought and received them in the nighttime, from an unnatural source and at a greatly reduced price, and on the trial denied having bought and received them. It was undoubtedly a question for the jury to say whether the appellants knew that the

cigarettes had been stolen. It is true that the evidence is much stronger against the appellant, A. H. Rickenbaker, than against his co-appellant, J. T. Rickenbaker, but it was sufficient even as to J. T. Rickenbaker to require the trial Judge to submit the issue of his innocence or guilt to a jury.

Both the State and Federal Government required revenue stamps on cigarettes offered for sale in this State and where these stamps have been affixed at the time of the buying and receiving of such stolen cigarettes, they become a part of the intrinsic value of the property stolen, and the total value therefore was considerably over $20.00.

Appellants take the position that when the trial Judge at the commencement of the recess hour during the trial of the case remarked to the jury: "Gentlemen, I have concluded to keep the jury together during the trial of this case. If you want to send any message you may do so. There has been one mistrial in this case already," such statement was highly prejudicial to them because the jurors would think that it was the opinion of the Judge that one of the appellants would undertake to "reach" the jurors and that they were the class of citizens who would undertake to "fix" jurors. This would appear to be a strained construction. If such statement on the part of the trial Judge was thought by appellants to be prejudicial to them, they should have then and there called the matter to his attention and moved for a mistrial. They cannot sit by quietly and then when the case goes against them complain that they have been prejudiced by the remarks of the trial Judge. We assume that it is the last sentence in the statement to which objection is taken, since it may not be questioned that in the trial of any and all cases the trial Judge has the inherent power to keep the jury together.

The fourth question made by this appeal is the failure of the trial Judge to charge the law of circumstantial evidence. In justice to the learned Judge, it

must be stated that no request was made by appellants, though represented by able counsel, that he charge the law of circumstantial evidence, and it further appears that at the conclusion of his charge to the jury he asked "Is there anything further?" and there was no response from counsel. The appellants contend, however, that although there was no request for such instructions it was yet the duty of the trial Judge to charge upon the law as to circumstantial evidence, and cite the case of *State v. Bunyon,* 137 S. C., 391, 135 S. E., 361, wherein Mr. Justice Blease, later Chief Justice, stated (page 362): "There is no doubt as to the proposition that when the state depends entirely upon circumstantial evidence for the conviction of an accused person, it is the duty of the Circuit Judge to instruct the jury as to the law governing testimony of that class." The sentence following in that case is as follows: "In this case, however, the state did not rely solely upon circumstantial evidence."

In the case at bar the State did not rely solely upon circumstantial evidence. By direct and positive testimony the cigarettes were traced as stolen property from the store of Mr. Collier into the possession of appellants and at a greatly reduced price.

All exceptions have been considered, and are overruled.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and FISHBURNE, and MR. ACTING ASSOCIATE JUSTICE G. B. GREENE concur.

MR. JUSTICE CARTER did not participate on account of illness.