15253

O'KELLEY v. MUTUAL LIFE INS. CO. OF NEW YORK

(14 S. E. (2d), 582)

*Messrs. Thomas, Cain & Black,* and *Mr. Wm. P. Baskin, Jr.,* for appellant, with *Mr. Louis W. Dawson* of counsel,

110

*Mr. Henry C. Jennings, Messrs. Ruffin & Munn* and *Mr. R. W. McLendon,* for respondent,

In reply, appellant's attorneys

May 5, 1941.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE STUKES.

Plaintiff, now about sixty-two years old, was reared on a farm near Bishopville in this State which he left at the age of fourteen and thereafter attended college and graduated in dentistry, the practice of which he began in 1904, first in Alabama and finally in Miami and Miami Beach, Florida, where he lived and practiced his profession from 1915 to 1929.

In March, 1928, he obtained the policies of insurance from the defendant which are involved in this action. They contain provisions for payment under certain conditions of benefits for total disability which is defined as "any impairment of mind or body which continuously renders it impossible for the insured to follow a gainful occupation."

In the summer of 1929, the insured became ill to the extent that he was unable to continue his practice, was examined and treated by a number of physicians and closed his office in August of that year. Proofs of his condition were furnished the defendant and it began the payment in March, 1930, of the disability benefits and continued the same through May 13, 1940, when it declined further payment and this action was thereafter commenced by the service of the summons and complaint in July of that year for the benefits accruing for the months of June and July.

Meanwhile, in the summer of 1930, plaintiff moved from Miami to the farm in Lee County which he had inherited and after about five years moved from the farm into the town of Bishopville. During the approximate ten-year period of payment of the disability benefits by the insurer, it required the furnishing several times each year by the plaintiff of information as to his condition, including reports of examinations by his physician and by physicans designated by the insurer.

By his complaint the plaintiff demanded also the return to him with interest of premiums paid under protest about June, 1940, the payment of which had been waived by the company under the terms of the policies during the period of the payment of disability benefits.

The contention of the defendant, set up in its answer and thereby made the issue, is that the plaintiff is not now so totally disabled that he cannot follow a gainful occupation within the terms of the policies and, as developed by defendant's testimony, plaintiff was actually operating his farm, whereupon the liability for disability under the policies had ceased.

The case was tried at the fall, 1940 term of the Court of Common Pleas for Lee County and resulted in a verdict for the plaintiff. The defendant made timely motions for nonsuit and for direction of the verdict which were refused by the trial Judge, now made the basis of exceptions on this appeal from the judgment entered upon the verdict. Such makes the first question submitted to this Court by the appellant. For disposition of it at least brief reference to the testimony is necessary.

Two local physicians who had treated the insured over periods of the last several years before the trial testified to the effect that he was an ill man, suffering from angina, arteriosclerosis, diabetes, neuritis, arthritis and low blood pressure, and from such diseases was totally disabled to follow any gainful occupation, being thereby rendered nervous, weak and without physical resistance, and specifically that he could not do the work of a dentist or a farmer, and that this condition is permanent. One of these doctors lived next door to the plaintiff and both had seen him with attacks of angina (heart disease) on several occasions. One of them testified on cross examination to a report of an examination of the respondent in December, 1939, at Duke University Hospital, of x-ray pictures there made showing among other things, evidence of hardening of the arteries and an electrocardiogram (picture or graph of the heart ac-

tion), which latter showed no abnormality "except for the presence of the wave in the third lead, which is suspicious evidence of coronary disease."

A physician who took x-ray pictures of the respondent at Toumey Hospital in Sumter identified them and testified that they were made on May 30, 1939, and that they showed extensive arthritis of the spine and pelvis, swelling in the lower legs and a marked hardening of the arteries.

The respondent testified that he left Florida for his Lee County farm for higher altitude, quiet and the opportunity for exercise and stayed there about five years before moving to town, that the farm was operated under the supervision of at least two of his sons at all times, he having four and the two of them acting on the farm at the time of the trial being twins twenty-eight years old, and another was thirty-two; that they had sharecroppers and wage hands and actually worked themselves, and that he did not operate or manage the farm and that because of severe pain, weakness and occasional lack of muscular control he could not work, but that he walked about the farm for diversion and exercise after which he was better able to rest at night.

His testimony was in great detail as to his symptoms and sufferings which need not be here repeated. On cross examination he testified that the farm contained about four hundred acres of which one hundred and thirty-five were cleared, that his sons rented some adjoining land and there were six work animals and a tractor used in cultivation by his sons of the usual crops and that he contracts with some sharecroppers, but the most of them deal with the sons and that he consults with the latter, and that he had been advised by the farm agent to sign the Government contracts which have lately been signed by his sons using the name of the respondent "and sons"; that he visits the farm frequently when able, but often is unable, sometimes for weeks at a time; that he and his sons "as a unit" finance the farm operations, that he sometimes lets them have money and they also

make other arrangements, and that they market the farm products, sometimes consulting with him.

Two of respondent's sons testified that they and a third operated the farm as they had done since they moved there from Miami, and their father was more of a hindrance than a help, and they testified to attacks which he suffered on his irregular visits to the farm, some causing him to fall and they having to bring him back home, where he also frequently suffered similar attacks and they were occurring with greater frequency recently. To the latter effect respondent's wife also testified and that he is unable to work and does not visit the farm for weeks and months at a time.

Several present and former tenants or sharecroppers on the farm testified for respondent that he did no farm work, either actual or supervisory, and that he was subject to attacks on his visits to the farm; and the owner of an adjoining farm testified that the O'Kelley farm had been a joke, that the boys had been running it and that the respondent is not a farmer and is so nervous that he could not operate a farm. A Bishopville druggist testified as to an attack of weakness and chest pains suffered by respondent in his store when a physician had to be summoned, and on another occasion when the respondent had to be carried home.

For the appellant several former croppers or tenants on the O'Kelley farm testified in contradiction of the respondent's corresponding witnesses, that the respondent made contracts with them, exercising supervision and did work on the farm.

A Columbia physician testified that he was a medical referee and examiner for the appellant and that respondent reported to him for examination in March, 1940, and that he found some evidence of diabetes but upon examination with a stethoscope he found no symptom of heart disease and, in his opinion, while respondent could not plough all day nothing was found to prevent him from practicing dentistry; that there was some evidence of arthritis in the hand; and this witness referred the respondent to another

physician in Columbia, whom he described as a reputable internist, who also made clinical and laboratory tests.

The latter testified that he conducted an examination of the respondent, consuming portions of two days, and reached a diagnosis which included only mild diabetes, well controlled by diet, and a "Q3 wave," an indication of coronary heart disease, in the electrocardiogram, and that otherwise respondent was in "fairly good shape for a man of his age" and able to continue his normal activities although he was very nervous and had nodules on the tips of his fingers.

The Sumter physician for whom were made the *x*-ray pictures introduced in evidence by the respondent testified concerning his examination on May 31, 1939, and that it disclosed no diseases except mild diabetes and arthritis in the knees and that the blood pressure, 110 at that time, was on the border line of low pressure; and the witness was of the opinion from his examination that the respondent could resume the practice of dentistry.

The appellant also introduced in evidence the chattel mortgage given in 1940 for crop advances and executed by respondent and two of his sons; three laborer's agreements between respondent and various croppers dated in 1934, 1935 and 1939, respectively, whereby the croppers agreed to work under the supervision of the landlord or his agents; and chattel mortgage of respondent to another dated in 1940 of a 1936 "pickup" truck.

Appellant's motion for a nonsuit at the close of respondent's evidence was made upon the ground in effect that the only reasonable inference to be drawn from the testimony was that the respondent was engaged with his sons in a partnership in the operation of the farm and this was repeated in the motion for the direction of the verdict and further that the respondent is likewise able to resume practice of his profession of dentistry. The trial Court's ruling upon the latter motion is so pointed and accurate that it is here quoted with approval: "The Court: My impression is that the testimony is conflicting on these issues,

and being conflicting it is left for the jury to judge them rather than for the Court to judge them. As I understand the decisions, the testimony is susceptible of more than one reasonable inference. I think there is testimony from which the jury could reasonably conclude, if believed by the jury, or I should say there is testimony which, if believed by the jury, would warrant reasonably the inference that plain-' tiff is totally and permanently disabled, as that term is used in the contract, and as it is defined under the decisions. So also there is testimony in the case which, if believed and accepted by the jury, is reasonably susceptible of the inference that he is not totally and permanently disabled. Certainly I don't see how I could possibly direct a verdict either way in this case."

The correctness of the conclusion of the Court is shown by consideration of the foregoing résumé of the evidence. Incidentally, the latter should have if necessary for decision on the motion, been considered most favorably to the respondent. See *Thompson v. Aetna Life Insurance Co.*, 177 S. C., 120, 180 S. E., 880, and the several cases therein cited. In the light of these authorities the issue was properly submitted to the jury and their verdict has answered appellant's first question adversely to it.

The other question presented by the appeal is whether the Court erred in permitting respondent's doctors to testify over the objection of appellant, after detailing their diagnosis, that in their opinion the insured is totally disabled. Appellant strongly argues that such testimony is of the ultimate fact in controversy, is to a conclusion that can be reached only by the jury and is, therefore, incompetent; and there is high authority, though it be in the minority, for this position. See note in 111 A. L. R., 604.

However, the rule is well established in this State that the admission in evidence of the opinion of an expert on a fact in issue and whether the witness has qualified as an expert are very largely in the discretion of the trial Judge, in the exercise of which we find no abuse,

legal error, here. *State v. Terrell,* 12 Rich., 321; *Collins v. Atlantic Coast Line R. Co.,* 183 S. C., 284, 190 S. E., 817; *Huggins v. Broom,* 189 S. C., 15, 199 S. E., 903. That the admission of the opinions complained of by the appellant is in accord with the rule of the majority of jurisdictions is indicated by the text in 29 A. J., 1122, Insurance, par. 1499.

In this instance the witnesses were physicians who had testified to their qualifications of education and experience and we think their opinions that the respondent was totally disabled by the diseases which they had diagnosed and to which they testified were competent. The function of the jury is not interfered with by this testimony; on the contrary, it is an aid for it is admitted only when it is upon a subject more familiar to the expert witnesses than to the laymen, constituting the jury. The latter are nevertheless the judges of the credibility of these as other witnesses and of the weight to be given their evidence. As was so well said by Mr. Justice Woods in *State v. Johnson,* 66 S. C., 23, 44 S. E., 58, 63, "after expert testimony is admitted by the court, it is to be considered by the jury just as other evidence, and given such weight as, in the opinion of the jury, it should receive." Similarly in cases as of Stewart, *infra,* such testimony affords no insurmountable obstacle to the Court in passing upon motions for nonsuit and direction of verdict.

Appellant relies upon the decision of this Court, just referred to, in *Stewart v. Pioneer-Pyramid Life Insurance Co.,* 177 S. C., 132, 180 S. E., 889, and particularly the citation there of *United States v. Spaulding,* 293 U. S., 498, 55 S. Ct., 273, 79 L. Ed., 617. In the latter case the Court states in its opinion that similar testimony of physicians was improperly admitted, but this Court cited with approval only the holding that the medical opinions that the insured had become totally and permanently disabled were without weight. The significance of this is seen in the *Stewart case* when the opinion of this Court is carefully considered. In that case it was undisputed that the insured was continuing

to perform the work and duties of his usual occupation and to receive the compensation. What this Court held was that in the face of the undisputed facts of continued usual employment and earnings, the medical opinion in evidence was without value in determining the insurer's motion for the direction of a verdict in its favor; nothing was said as to the admissibility of the testimony. Recent comment upon the holding of the Stewart and similar cases is found in *Cotton v. Equitable Life Assurance Society,* 195 S. C., 194, 10 S. E. (2d), 909.

For the reasons indicated the exceptions are overruled and the judgment below is affirmed.

MR. CHIEF JUSTICE BONHAM, MESSRS. JUSTICES BAKER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE T. S. SEASE concur.