16562

STATE v. BLACKWELL *ET AL.*
(67 S. E. (2d) 684)

*Messrs. Raymond B. Hildebrand,* of York, and *C. T. Graydon,* of Columbia, *for Appellants,*

*Mr. Robert W. Hemphill,* Solicitor, of Chester, *for Respondent,*

November 14, 1951.

STUKES, Justice.

The appellants were tried and convicted in York County upon an indictment which charged that Paul Armstrong set fire to, and burned, a warehouse and that appellants, quoting from the indictment, "did aid, counsel or procure the burning of such warehouse." The crime is defined in Sec. 1133 of the Criminal Code of 1942 which prescribes imprisonment of not less than one nor more than ten years. Ap-

pellants were sentenced to two years and appealed upon exceptions which principally impute error in the admission of testimony of conversations antecedent to, and at the time of, the commission of the crime. The conversations will appear in the following summary of the material portions of the evidence which was adduced by the State. Appellants did not testify or offer any other evidence.

Armstrong pleaded guilty and testified substantially as follows: He lives at Lowell, near Gastonia, in that part of North Carolina which adjoins York County in this State. He was recently out of a job as a textile worker there. On the night of the fire, which was in the town of Clover in this State, he was with appellants and two others, namely, Pickelseimer and Wilson. At the time of the trial both Pickelseimer and Wilson were imprisoned in North Carolina. Armstrong met up with Pickelseimer and the appellant Blackwell, whom he identified in court. Blackwell and Pickelseimer were in the former's automobile when the witness joined them. In the presence of Blackwell, Pickelseimer inquired of the witness whether the latter would like to make about a hundred dollars, to which the witness agreed. The three went to a place called "Skipper's" where they sat around a while and tools were obtained, a crowbar and screwdriver, which were placed in Blackwell's car. Wilson then went with them to Kay's Cafe in Gastonia where they sat around until the appellant Funderburk arrived in a Buick automobile. All then started to leave in Blackwell's car which it was discovered had a flat tire, whereupon it was parked at a filling station and all got in the Buick of Funderburk, who drove into this State. The conversation among them was to the effect that Wilson said he would burn the building but Pickelseimer suggested that the witness do it. They together planned to rob a drug store in the town of Clover and, to attract "the law" away from it, they would burn the building which Funderburk said he had found for the purpose. It was decided that the witness would burn the building, Pickelseimer and Wilson would rob the store and appel-

lant Funderburk would pick them up in his automobile afterward. It was between one and two o'clock A. M. When they they reached Clover they first went to Funderburk's filling station, called "Clover Grill". Funderburk put gasoline from his pump into the automobile and an additional amount in a half-gallon fruit jar which he placed in the automobile. They then drove back toward Gastonia and outside of Clover they put Blackwell out and turned back toward the town on a dirt road. Blackwell was to remain at that point until the others gathered after the burning and robbery when Funderburk would pick them up there. The four others, including the witness, went into town in the automobile of Funderburk who was driving. Wilson and Pickelseimer were let out, with the tools, at a cemetery at the edge of town and the witness, then being the only remaining passenger, moved into the front seat with Funderburk, and protected the gasoline from spilling. They went through town to the frame building which had been selected to be burned, behind a large church. The witness got out at the front of the building and Funderburk went on in the automobile after instructing the witness how to get back to Blackwell. The door of the building was locked and the witness went to a side window, tore off the screen, raised the sash and poured the gasoline inside; he stepped back and threw in a lighted match, setting the fire which blazed immediately. He ran down the street, through a broom sedge field, pursuant to Funderburk's directions, and found Blackwell waiting according to plan. Blackwell told him that he had heard two shots, which the witness had not. Pickelseimer then arrived and said to the witness and Blackwell that they (referring to himself and Wilson) were caught and he thought Wilson was shot, which the witness understood was in the drug store. Then Funderburk arrived in his automobile and was informed by Pickelseimer that the latter thought Wilson had been shot, that he last saw him as he went over a fence. Funderburk then took the three others there in his automobile, let the witness and Pickelseimer out on Crowder Mountain Road

and took Blackwell on to Gastonia or somewhere, saying that he (Funderburk) was going back to Clover to ascertain whether Wilson was shot. The witness and Pickelseimer waited in the woods until daylight when Funderburk returned and said that Wilson had not been shot or, at least, that he had not seen him in Clover. Funderburk then took the witness and his companion, Pickelseimer, to Skipper's in his automobile. Farther down the road they met Wilson in Skipper's Ford automobile. He informed them that he had walked from Clover to Gastonia. He had tied a handkerchief about a wound on his arm and said that he had been either cut or shot. Funderburk then carried the witness back to Gastonia. Later he was taken into custody, as Wilson was afterward, and imprisoned in Gastonia for nineteen days before he was brought to this State. When Wilson was placed in jail with him in Gastonia Wilson told him that he had pleaded guilty and told the officers the truth and that the witness should do the same, which he did. Afterward, in the South Carolina jail, the witness signed a statement. The intended loot from the drug store, which the witness did not recall whether was $500.00 in cash or $500.00 worth of narcotics, was to have been divided into five shares, between the five participants who have been named.

Another witness for the State was the night watchman who was guarding the four Clover liquor stores which are located along the Gastonia road. Nearby is the Clover Grill which was formerly operated by Funderburk, now by another; both had keys. The witness saw Funderburk in his Buick automobile at the filing station on the night of the fire. He went in the station, came back and talked to someone in the automobile, operated the gasoline pump a second time when gasoline was not being put into the tank of the automobile. It was driven off toward Gastonia and in about twenty minutes the fire alarm sounded. When at the fire the witness heard two shots and shortly afterward Funderburk returned to the Grill alone and invited the witness to have a coca-cola with him, then drove off.

One of the two Clover policemen who were on duty at the time of the fire testified that they were watching the drug store when the fire alarm sounded and they. went to the fire. One remained but the other, who testified, returned in three or four minutes to the rear of the store where he found that the screen door had just been torn. As he jumped out of his automobile someone ran out of the store and dropped a flash light, whereupon the witness shot at him. The Chief of Police testified as to the relative locations of the store and the warehouse, about two and a half blocks apart, that the latter building was insured for $3,500.00 and about $6,000.00 worth of uninsured paint was stored in it, and all destroyed by the fire. The cemetery, referred to in the testimony of Armstrong, is about two blocks behind the store. The Clover Grill, owned by the appellant Funderburk, recently leased to another, is a rough place. It has been raided several times and liquor found there and Funderburk had been charged with gambling. He is usually out at night in his automobile, quoting, "until the wee hours of the morning", and has not worked since he leased the Grill to another. He is drawing disability for battle injuries.

The fact that the State did not include in the indictment the two accomplices who were imprisoned beyond the jurisdiction is not important. *State v. Fley,* 2 Brev. 338, 4 Am. Dec. 583; annotation, L. R. A. 1915E, 608. And the accomplice who testified was a competent witness. Corroboration, which was present with respect to appellant Funderburk at least, was not essential. *State v. Sowell,* 85 S. C. 278, 67 S. E. 316; *State v. Whaley,* 113 S. C. 103, 101 S. E. 568; *State v. Johnson,* 156 S. C. 63, 152 S. E. 825; *State v. Bagwell,* 201 S. C. 387, 23 S. E. (2d) 244.

The complex plot of appellants and their accomplices and the respective parts which they played come within the following from the opinion in *State v. Gilbert,* 107 S. C. 443, 93 S. E. 125: "If several persons in pursuance of a common design to commit an unlaw-

ful act, whether it be a felony or misdemeanor, set out to-
gether or in small parties, and each takes the part agreed
upon or assigned him, some to commit the act, others to
watch at proper distances and stations to prevent interfer-
ence or surprise or to encourage the commission of the un-
lawful act or to favor, if necessary, the escape of those im-
mediately engaged in the commission of the unlawful act,
under these circumstances, if the unlawful act is committed,
the act of one is the act of all and all are presumed to be
present and guilty; for this would be in pursuance of a com-
mon purpose in a common cause with them each operating
in his station at one and the same instant to arrive at a
common end. The act of each would tend to give counte-
nance, encouragement, and protection to the whole gang and
to insure the success of the common undertaking in the com-
mission of the unlawful act.  *  *  *  If they were there
to carry out the unlawful designs in pursuance of a common
design participating actually or potentially if necessary then
all were guilty, the act of one was the act of all." To the
same effect is *State v. Newman,* S. C., 80 S. E. 482.

Motion was made in behalf of appellants for direction of
verdict in their favor, which was refused. The record does
not contain the ground or grounds therefor or any explana-
tion of the absence of it or them. After conviction appellants
moved for new trial upon the ground of alleged error in the
admission of the testimony of Armstrong as to the state-
ments of Pickelseimer and Wilson which are related in the
above summary of the testimony of Armstrong; and upon
the ground that the testimony of Armstrong accorded with
his pre-trial statement to the officers which was not volun-
tarily made. New trial was refused and the second ground
therefor, just stated, has been abandoned.

As noted above, the appeal record does not contain
any grounds of the motion for direction of verdict
of not guilty and therefore does not show compliance
with Rule 76 of the Circuit Court; but the deficiency will
be waived by the court in this criminal case which involves

the liberty of the appellants and the motion will be treated as if it was made on the general ground. *State v. Ray,* 147 S. C. 329, 145 S. E. 192; *State v. O'Shields,* 163 S. C. 408, 161 S. E. 692. However, the exceptions which challenge the sufficiency of the evidence to support the verdict of guilty as to both appellants may be properly overruled without discussion. Consideration of the testimony which has been stated is quite convincing of its adequacy.

Appellants' other questions on appeal will be considered in the order in which they are presented in the brief, without formal statement or quotation of them. None is of merit. As has been indicated, that most stressed is based upon the admission in evidence, over objection, of the verbal planning of the crime and conversations contemporaneous and immediately afterward, the latter concerned with the escape of the participants from the scene which may fairly be said to have been during the continuance of the conspiracy.

Review of Armstrong's testimony, which has been set forth in some detail shows that the conversations by and between the five persons concerned were either in the presence of both appellants or in the presence of at least one of them; and some of the statements were by one or the other of them. In these circumstances the conversations were competent evidence against them. The very nature of the crime charged rendered the conversations competent, indeed almost, if not quite, necessary to proof of the violation of the second feature of the statute, of which appellants were convicted, as follows: "Any person who wilfully and maliciously * * * aids, counsel or procures the burning", etc. Of course, one cannot counsel or procure without communication. Appellants practically concede in argument that the conversations were competent against them in whose respective presence they occurred, which is to say that such conversations as were in the presence of both appellants were admissible against both, and those that occurred in the presence of only one were admissible against that one. At one stage of the trial when the point was urged by counsel, the

solicitor agreed, and the evidence was offered and received accordingly. However, there was no mention of the contended distinction in the court's charge to the jury and no request therefor by appellants. If appellants' position thereabout had been sound, which it was not as we shall see, it was clearly their duty to request that it be included in the charge if they desired it. *State v. Blue,* 118 S. C. 127, 110 S. E. 111 (which is also a general precedent here). Instead, their counsel expressed satisfaction with the latter upon completion of it, which circumstance will be again adverted to in the discussion of the last ground of the appeal.

Apart from the last stated consideration and apart from the nature and terms of the statute under which appellants were prosecuted, the testimony complained of was not objectionable as hearsay because the evidence of Armstrong, an accomplice, tended to show the formation and execution of a conspiracy to commit crime, to which appellants were parties; which made all relevant conversations of any of the participants competent against all. The principle is concisely put in 10 South Eastern Dig. 380 as the headnote to 423 (2), Criminal Law, as follows: "When a conspiracy is proved, all acts and declarations in furtherance thereof, by any of the conspirators, to advance the common cause, are evidence against all, though not done or made in the presence of each other." The same is found at more length in 11 Am. Jur. 571, Sec. 40, from the conclusion of which, at p. 573, the following is quoted: "It is immaterial whether or not the declarations were made in the presence of the party or parties against whom the evidence is offered or that they had any knowledge of the statements. It is also unnecessary that a co-conspirator be a party defendant to make his acts and declarations binding upon the others." To like effect is 15 C. J. S., Conspiracy, § 92a, page 1141.

Appellants ineptly refer in argument to the testimony under review as "third party" statements and "third party" declarations but the "parties" to which reference is had were accomplices or co-conspirators whose acts and declarations in

furtherance of the conspiracy were competent because of the evidence of the existence of it. They likewise mistakenly cite 20 Am. Jur. 427, 428, which has to do with the admissibility in evidence of pre-trial confessions of co-defendants which related when made to past events. Here, of course, we are dealing with the trial testimony of an accomplice turned State's evidence in reference to acts and declarations contemporaneous with the crime, which calls for application of the very different principle which is controlling.

The concerted plan of appellants and the others made of them conspirators to commit crime, although the indictment charged them with violation of the statute, Sec. 1133, and not conspiracy *eo nomine*. Upon *prima facie* proof of the existence of conspiracy, as here, the conversations were admissible against the conspirators on trial, who now appeal. That it is not necessary that an indictment expressly charge conspiracy in order that this principle of the law of evidence shall apply is shown by *State v. Green,* 40 S. C. 328, 18 S. E. 933, 934, 42 Am. St. Rep. 872, and *State v. Rice,* 49 S. C. 418, 27 S. E. 452, in neither of which was conspiracy charged in the indictment. In *State v. Green* it was said: "There is no doubt but that, when persons have banded themselves together to accomplish some crime, every word or act of each conspirator in furtherance of such accomplishment of the crime binds every other of such conspirators." Such evidence, which is admitted as an exception to the hearsay rule, is sometimes inaccurately referred to as *res gestae.* VI Wigmore on Evidence, 3rd Ed., 184, 185, sec. 1769. See also, *State v. Philips,* 73 S. C. 236, 53 S. E. 370; *State v. Kenny,* 77 S. C. 236, 57 S. E. 859, and *State v. Kennedy,* 85 S. C. 146, 67 S. E. 152.

In *State v. Bennett,* 226 N. C. 82, 36 S. E. (2d) 708, 710, numerous persons were indicted for murder while engaged in robbery. There was *nol pros* as to one and several others pleaded guilty to murder in the second degree, during the course of the trial. The three remaining defendants were convicted by the jury. The judgment recites that the State pro-

ceeded in the trial upon the theory that the defendants con-
spired to rob and the victim was killed in the attempted rob-
bery. Error was claimed in the admission of evidence of
conversations between one of the defendants and others,
which were not in the presence of appellant. The conclusion
of the court is contained in the following excerpt from the
opinion: "The appellant (Bennett) further challenges the
competency of the testimony of the witness, the defendant
Salmon, as to conversations between him and defendants
Carroll, Agner and Norris which were not expressly shown
to have been in presence of * * * Bennett. These con-
versations appear to have been in furtherance of a common
purpose or conspiracy to rob the deceased Beck, as to which
the evidence is clear. 'The acts and declarations of each con-
spirator, done or uttered in furtherance of the common, ille-
gal design, are admissible in evidence against all.' "

*Walker v. State*, 1938, 57 Ga. App. 868, 197 S. E. 67, was
an appeal from conviction upon an indictment in which sev-
eral were jointly charged ·as accessories before the fact of
robbery and that appellant and others procured and coun-
seled the robbery by two persons known only as "Jimmie"
and "Jack" who could not be apprehended and prosecuted
as principals. Chief witnesses for the State were two accom-
plices who were included in the indictment along with appel-
lant. It was held that the evidence authorized the finding
that appellant and the others had conspired to commit the
crime and that appellant, although not present at the com-
mission of the crime, had counseled and procured it. One of
the grounds of appeal was that alleged hearsay evidence was
admitted which related conversations between the defendant,
turned State's evidence, and certain co-defendants, which
were not in the presence of appellant. The court held, as we
do here, that the evidence of conspiracy entitled the conver-
sations to admission in evidence because they occurred be-
tween some of the conspirators during the pendency of the
criminal project. A recent, clear statement of the rule here-
about is found in *State v. Simon,* W. Va. 1949, 52 S. E.

(2d) 725, 735, which involved conviction of appellant upon an indictment which charged him and others with tampering with ballots cast in a general election. The court said: "There is no direct charge of conspiracy in the indictment, but we think it is settled practice in this State that in cases, where there is an indictment charging two or more persons with the commission of an offense, evidence may be introduced to show common purpose, or in other words a conspiracy, to commit the offense alleged, in order that testimony of one of the parties to the offense may be introduced and considered in connection with the trial of any one of them, even though the acts or statements are not committed or made in the presence of defendant being tried."

Another imputation of error relates to the admission of evidence concerning the attempted robbery of the drug store at the time of the burning of the building, which it is claimed was another and separate offense, concerning which evidence should not have been received. This is patently untenable because it corroborated Armstrong's testimony that the motive for the burning was the protection of the intended robbery of the drug store. Quoted with approval in *State v. Pittman,* 137 S. C. 75, 134 S. E. 514, 520, (and in earlier cases) is the following: "Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; (5) the identity of the person charged with the commission of the crime on trial." Other pertinent authorities are: *State v. Kenny, supra,* 77 S. C. 236, 57 S. E. 859; *State v. Davis,* 88 S. C. 204, 70 S. E. 417; *State v. Richey,* 88 S. C. 239, 70 S. E. 729; and *State v. Blanden,* 177 S. C. 1, 180 S, E. 681; 20 Am. Jur. 296, Evidence, Sec. 314. There is no conflict between our conclusion hereabout and the leading case of *State v. Gregory,* 191 S. C. 212, 4 S. E. (2d) 1, as is seen by reference to it.

It is also contended that the court committed prejudicial error by allowing testimony by one of the police officers of an apparent attempt at robbery of the same store on the night before the fire. But this was excluded by the court because there was no evidence of the connection of the appellants with that attempt, and the jury were clearly instructed that they should not consider the testimony thereabout.

Finally, appellants assert that the court's failure to instruct the jury concerning the law of circumstantial evidence was error. But it has been repeatedly held that in the absence of request, the court need not give such instructions unless the case for the prosecution depends entirely upon circumstantial evidence, which was not true here in view of the testimony which has been briefed. *State v. Bunyon,* 137 S. C. 391, 135 S. E. 361, *State v. Gatlin,* 208 S. C. 414, 38 S. E. (2d) 238; *State v. Duck,* 210 S. C. 94, 41 S. E. (2d) 628; *State v. White,* 211 S. C. 276, 44 S. E. (2d) 741; *State v. McDowell,* 212 S. C. 70, 46 S. E. (2d) 549. At the conclusion of the charge, the court turned to appellants' counsel and inquired as follows: "Mr. Hildebrand, is there anything more that you can think of?" Counsel replied: "No, sir."

The exceptions are overruled and the judgment affirmed.

BAKER, C. J., and FISHBURNE, TAYLOR and OXNER, JJ., concur.