241 S.C. 487 (1963)
129 S.E.2d 330
The STATE, Respondent,
v.
Louis MOORER, Appellant.
18016
Supreme Court of South Carolina.
January 21, 1963.
*488 *489 W. Newton Pough, Esq., of Orangeburg, for Appellant.
*490 Julian S. Wolfe, Esq., Solicitor, of Orangeburg, for Respondent.
*491 January 21, 1963.
TAYLOR, Chief Justice.
The Appellant, Louis Moorer, a 22 year old Negro man, was tried and convicted in the Court of General Sessions for Dorchester County, of the charge of rape and was sentenced on April 4, 1962, to death as provided by the laws of the State of South Carolina and this appeal follows.
At the opening of the October, 1962, Term of this Court, Attorney W. Newton Pough, an attorney of good repute who had been retained by relatives of Appellant and had represented him at the time of trial, moved, after notice, that he be excused by the Court from further service in the case because certain relatives of Appellant had stated to him that it was their desire that other counsel represent Appellant upon appeal. Investigation revealed that counsel had already filed his brief and done all things necessary in the appeal except make oral argument. Other counsel, Moore & Brown, attorneys of Charleston, stated to the Court that certain relatives of Appellant desired that they participate in the appeal and petitioned that they be entered as attorneys of record for the purpose of this appeal.
Because of the serious nature of the case, the Court felt that it was to the best interest of Appellant that counsel who had represented him upon trial should remain in the case and refused his motion to be relieved of further duties with respect thereto.
The petition of attorneys Brown & Moore that they be permitted to participate in this appeal was granted and oral argument made. They were granted additional time in which to file their brief, which was duly filed with the Clerk of this Court.
The prosecutrix is the wife of a prominent practicing physician residing in the Town of St. George, S.C. On December 14, 1961, Appellant, who had been known by the prosecutrix for approximately 6 or 7 years, was working in the *492 yard at the prosecutrix' home. He had come to work at approximately 8 A.M. and worked until noon when he left to go to lunch with the announced attention of returning and finishing the work. Appellant returned to prosecutrix' home at approximately 1:45 P.M. At that time the prosecutrix' sister-in-law was concluding a short visit. The Appellant was working in the front yard as the sister-in-law left the house by the back door and departed in her automobile.
After her sister-in-law's departure, the prosecutrix, who was alone in the house at this time, walked to the front of the house to see how Appellant was progressing with his work. She noticed that he would need a dustpan and directed Appellant to wait on the front porch while she went to get the dustpan out of the broom closet. As she returned through the dining room, Appellant ran toward her and grabbed her with both arms. The prosecutrix said, "Louis, here is the dust pan"; and he replied, "Dust pan? Dust pan? we don't need no dust pan for what I am going to do to you." After that the prosecutrix testified that she and her attacker started struggling and fighting. During this time she pleaded with him to desist and stated that if he would leave immediately she would not tell. He then threw her to the floor and started beating her head up and down on the floor, stating, "Hell, tell, tell, tell. Who is going to tell? I ain't going to leave you to tell." Appellant commenced twisting the prosecutrix' arm, and they continued to struggle. As they neared the front door, the prosecutrix screamed and Appellant started choking her. After further struggle, Appellant started kissing the prosecutrix and she slapped him. Appellant then struck the prosecutrix over the temple and started slapping her with her own hands, saying, "Don't you never do that again to me, * * *, when I kiss you. Don't you never. I came to get it and I will stay until I get it." After prolonged struggle, the prosecutrix testified that she could not fight any more and that Appellant did ravish and rape her. She further testified that Appellant relaxed for a second, and she jumped up and started through the front door. At this time her children *493 were returning from school; it was approximately 2:15 P. M. Appellant then left, and the prosecutrix had her sister-in-law summoned. The prosecutrix later was examined by a physician, who testified that upon aspiration of the vagina, live male sperm was found. He also testified as to her injuries and that she was in a state of shock when first seen.
The first question for determination is whether the Court erred in refusing Appellant's motion for continuance and change of venue. Appellant recalled his motion for continuance which was based upon the requirement for a three days' sight of indictment as required by Section 17-408, Code of Laws of South Carolina, 1952, and did not pursue this point in his brief or argument. The motion for change of venue is based upon the fact that the prosecuting witness and her husband, who is a practicing physician, are very prominent in the community and that a presumption is raised that members of the jury panel or their families were or have been members of the doctor's clientele.
A motion for change of venue is addressed to the judicial discretion of the trial Judge and this Court will not reverse the trial Judge's disposition of such motion in the absence of a clear and conclusive showing of abuse of discretion. State v. Britt, 235 S.C. 395, 111 S.E. (2d) 669; State v. Livingston, 233 S.C. 400, 105 S.E. (2d) 73; State v. Mouzon, 231 S.C. 655, 99 S.E. (2d) 672; State v. Davis, 138 S.C. 532, 137 S.E. 139; State v. Goodwin, 127 S.C. 107, 120 S.E. 496; State v. Jackson, 110 S.C. 273, 96 S.E. 416.
"Where an application is made, by one accused of crime for a change of venue on the ground that an impartial jury cannot be obtained, the law devolves on the trial judge the duty and responsibility of making an examination and informing himself of the truth of the averments in the application; and where, after hearing evidence, the trial court is satisfied that a fair and impartial jury may be had in the county where the crime is alleged to have been committed, *494 this court will not reverse his judgment refusing to change the venue, unless it is made to appear that there has been an abuse of discretion. * * *" State v. Thomas, 198 S.C. 519, 18 S.E. (2d) 369.
The Appellant contends that the trial Judge erred by refusing the motion before ascertaining whether or not grounds existed which would warrant the granting of the motion. However, the motion did not state sufficient grounds for a change of venue and Appellant's counsel did not attempt to show the Court that Appellant was unable to obtain a fair and impartial trial. Even if it were true that all of the members of the jury panel were members of the doctor's clientele there is no legal presumption that this fact, standing alone, would prevent the accused from receiving a fair and impartial trial. Under these circumstances, it was proper for the trial Judge to refuse the motion. The trial Judge, however, after denying the motion, placed the prospective jurors on their voir dire in order to further protect the rights of Appellant and to insure that a fair and impartial jury could be impaneled. It is interesting to note that of the eighteen prospective jurors called, only the second one stated that he had been a patient of the prosecutrix' husband, and this juror was acceptable to both the State and Appellant.
The Appellant questions the admissibility of certain portions of the physician's testimony on the grounds that such testimony was incompetent in that the physician was never qualified in Court to testify as an expert witness. It is well established in this State that it is within the trial Judge's discretion to determine whether a witness has qualified as an expert. O'Kelley v. Mutual Life Ins. Co. of New York, 197 S.C. 109, 14 S.E. (2d) 582; Huggins v. Broom et al., 189 S.C. 15, 199 S.E. 903; Collins v. Atlantic Coast Line R. Co., 183 S.C. 284, 190 S.E. 817; and unless it is shown that there has been an abuse of discretion, this Court will not disturb the trial Judge's ruling. By permitting the doctor to testify, concerning the results of certain *495 medical tests and examinations, the trial Judge by inference ruled that he was qualified as an expert witness.
"When a witness is offered as an expert upon a matter in issue, his competency, with respect to the special skill or experience, is to be determined by the Court as a question preliminary to the admission of his testimony. There should be a finding by the Court, in the absence of an admission or a waiver by the adverse party, that the witness is qualified; and since there is no presumption that a witness is competent to give an opinion, it is incumbent upon the party offering the witness to show that the latter possesses the necessary learning, knowledge, skill, or practical experience to enable him to give opinion testimony. * * *" 20 Am. Jur. 659, Evidence, Section 786.
"* * * for the testimony of an expert witness to be received, his qualification as such must be first proved. * * * If that prerequisite is not met the opinion of the expert must be excluded." Knudsen v. Duffee-Freeman, Inc., 95 Ga. App. 872, 99 S.E. (2d) 370. This Court has held that a physician may qualify as an expert by testifying as to his education and experience, O'Kelley v. Mutual Life Ins. Co. of New York, 197 S.C. 109, 14 S.E. (2d) 582, or by a showing that he has been duly licensed to practice medicine or surgery, Hill v. Carolina Power & Light Co., 204 S.C. 83, 28 S.E. (2d) 545. Although no objection was made during trial to the physician's testimony and the admissibility of this testimony was first questioned on appeal, this Court, in a capital case, will search the record for prejudicial error, whether or not it was the subject of appropriate request, objection or motion in the trial Court, State v. Outen, 237 S.C. 514, 118 S.E. (2d) 175; and any such omission on the part of counsel will not be held to waive Appellant's rights, State v. Gardner, 219 S.C. 97, 64 S.E. (2d) 130.
In the present case the witness testified that he is a general medical practitioner. It is fairly well settled that a physician or a surgeon engaged in a general *496 practice is an expert and that his opinion is admissible on questions which are strictly and legitimately embraced in his profession and practice. 23 C.J.S. Criminal Law § 858, p. 396. We are of opinion that the physician by testifying that he was a general medical practitioner was prima facie qualified to testify as an expert witness and that it is not necessary to affirmatively show his medical education and experience in order to qualify as such witness. Testimony by a witness that he is a practicing physician qualifies him as an expert and to give his opinion based upon information, observation and examination, State v. Foote, 58 S.C. 218, 36 S.E. 551; and his education and experience or lack of such goes to the weight to be accorded his testimony and not to its admissibility.
Appellant also challenges the admissibility of a portion of prosecutrix' testimony preceeded by "He was saying  it seems like I could hear him saying * * *" as being nothing more than her opinion or impression of what the defendant may or may not have said, thereby being inadmissible as opinion testimony. "The use of phraseology appropriate to the expression of an inference, such as `believe,' `think,' etc., may in fact signify an opinion which renders the statement inadmissible. Nevertheless the use of such terms is not conclusive that the witness is stating his opinion, for the language may be used merely to indicate that he is not speaking with entire certainty, in which case the evidence may be received for what it is worth." 32 C. J.S. Evidence § 439, p. 71; see Leathers v. Sikeston Coca-Cola Bottling Co., Mo. App., 286 S.W. (2d) 393.
"The law cannot reasonably require of a witness testifying at the trial of an action absolute certainty of observation or statement. It recognizes the fallibility of human memory as well as the variation in powers of perception among human beings and permits a witness to testify to matters upon which his observation was not perfectly clear or his memory absolutely certain. The testimony of a witness who states facts from his observation, according to his best recollection or *497 his best belief as to what he saw or heard, is admissible, with its qualification. In other words, a witness who is uncertain as to either observation or recollection of a fact concerning which he is asked to testify may be permitted to give his testimony qualified by a phrase or phrases expressive of something less than a positive degree of assurance. He is not required to speak with such confidence as to exclude all doubts in his mind, but may render his testimony in the form of an estimate of opinion, couched in expressions that fall short of absolute conviction of accuracy. * * *" 20 Am. Jur., Evidence, Section 768, p. 639.
The qualification "it seems like" must be taken within the context of the prosecutrix' testimony in determining its meaning. As used by the prosecutrix the expression merely indicates the degree of positiveness of her recollection as to what defendant actually said and as such will not be excluded as being based on opinion rather than fact. Such qualification affects merely the probative force of the testimony.
Appellant alleges error by the trial Judge in permitting the prosecutrix to testify as follows: "* * * did he ravish you or commit rape? A. Yes, sir." It is contended that this testimony was incompetent in that the question called for and received an answer that contained an opinion upon the ultimate fact in issue before the jury, and amounted to a conclusion.
The general rule is that an inference, opinion or conclusion of a witness which is determinative of the vital issues or of the ultimate fact in issue is excluded as an invasion of the province of the jury. 32 C.J.S. Evidence § 446, p. 74. However, "It has been said that in every criminal case the testimony of witnesses involves in a way a conclusion or opinion of the witness, (and) that the rule excluding opinions or conclusions is at most only one of convenience, is not of absolute application, and should not be too strictly adhered to, and that the fact that the testimony *498 of a witness is a conclusion on his part is not alone the test of its admissibility." 23 C.J.S. Criminal Law § 858(1), p. 374.
In a prosecution for rape, carnal knowledge is a material element which must be proved beyond a reasonable doubt by the State. Carnal knowledge is completed by penetration, however slight. State v. Miller, 211 S.C. 306, 45 S.E. (2d) 23; State v. Wyatt, 221 S.C. 407, 70 S.E. (2d) 635; State v. Worthy, 239 S.C. 449, 123 S. E. (2d) 835. In order to sustain a conviction in a prosecution for rape the evidence must be sufficient to establish the fact of penetration beyond a reasonable doubt. Proof of penetration need not be in any particular form of words, 75 C.J.S. Rape § 71, p. 547; and use of the terms "raped" or "ravished" were held sufficient to warrant a finding of penetration in State v. Bowman, 232 N.C. 374, 61 S.E. (2d) 107; Shorey v. State, 227 Md. 385, 177 A. (2d) 245; State v. Worthy, 239 S.C. 449, 123 S.E. (2d) 835; King v. Commonwealth, 165 Va. 843, 183 S.E. 187; State v. Williams, 263 Mo. 603, 173 S.W. 1051; State v. Wilkins, Mo., 100 S.W. (2d) 889.
The words "rape" and "ravish" are synonymous terms, State v. Berry, 361 Mo. 904, 237 S.W. (2d) 91, of wide usage and plain English which have a well defined meaning. Webster's dictionary defines the word "rape" in the sense used here as "illicit sexual intercourse without the consent of the woman and effected by force, duress, intimidation, or deception as to the nature of the act" and the word "ravish" as "to commit rape upon a woman." The prosecutrix' testimony that she had been ravished and that the defendant had raped her, was evidence based upon facts which were peculiarly within her knowledge. It was proper to admit such testimony by a mature married woman, the wife of a physician, to describe the occurrence of carnal knowledge by the use of force. The record suggests no doubt that the prosecutrix knew the meaning of the terms used and the medical testimony fully supports her testimony by the *499 finding of live male sperm in the vagina. "While it is essential to show force and penetration upon a charge of rape, we are unwilling to promulgate a rule of law that requires an unoffending female to lay bare the facts of her ravishment to the extent of showing its accomplishment in all its sordid details." King v. Commonwealth, 165 Va. 843, 183 S.E. 187.
In construing words used by a witness, the reviewing tribunal should give them their ordinary meaning, and we are of opinion that the words "rape" and "ravish" when used in the context shown by the testimony must necessarily include that act of penetration and that the evidence is sufficient to sustain the verdict of guilty of rape.
Appellant next contends that the trial Judge erred in instructing the jury on the defense of insanity, alleging that the sanity of Appellant was not placed in issue. The only defense witness was Appellant's grandmother whose testimony tended to establish that Appellant did not act as a normal person. The State in reply presented a physician from the South Carolina State Hospital who had examined Appellant with the view of determining his mental condition, and he testified that Appellant was sane and knew right from wrong. The instructions given by the Court were correct statements of law with regard to insanity and rather than being prejudicial to the Appellant actually were favorable to him in view of the fact that the question of Appellant's sanity was submitted to the jury for its consideration. Swain v. State, 162 Ga. 777, 135 S.E. 187.
The exception which alleges error on the part of the trial Judge in failing to charge the law on circumstantial evidence is primarily based on the proposition that should the jury disbelieve the direct evidence in the case, only circumstantial evidence would remain for the jury to determine Appellant's innocence or guilt.
It is well settled that when the State depends entirely upon circumstantial evidence for conviction, the trial Judge must instruct the jury as to the law governing *500 testimony of that class, State v. Bunyon, 137 S.C. 391, 135 S.E. 361; State v. Atkins, 205 S.C. 450, 32 S.E. (2d) 372; State v. Gatlin, 208 S.C. 414, 38 S.E. (2d) 238; State v. Duck, 210 S.C. 94, 41 S.E. (2d) 628. State v. Blackwell, 220 S.C. 342, 67 S.E. (2d) 684. In the present case the State, as admitted by Appellant, did not rely upon circumstantial evidence for conviction of the defendant but direct testimony was presented as a vital part of the prosecution's case. Where the State does not rely wholly upon circumstantial evidence and no request was made that the trial Judge charge the law governing testimony of that class, it is not incumbent upon the trial Judge to charge the law pertaining thereto. State v. Rickenbaker, 187 S.C. 448, 198 S. E. 43; State v. Baker, 208 S.C. 195, 37 S.E. (2d) 525; State v. Gatlin, 208 S.C. 414, 38 S.E. (2d) 238; State v. McDowell, 212 S.C. 70, 46 S.E. (2d) 549; State v. Blackwell, 220 S.C. 342, 67 S.E. (2d) 684. Upon concluding the charge, the Court inquired of counsel as follows, "I want to know if there are any exceptions or requests for additional instructions?" Counsel replied, "Nothing from the defendant, your Honor."
The Appellant next contends error on the part of the trial Judge in refusing Appellant's motions for a directed verdict, judgment non obstante veredicto and for a new trial on the charge of rape based upon the contention that the State's evidence was on the charge of assault with intent to ravish and was insufficient to support the verdict of guilty of rape.
"It must be kept in mind that on appeal from refusal of the trial court to direct a verdict or grant a motion for a new trial, the evidence and inferences which may be reasonably drawn therefrom must be considered in the light most favorable to the State and if there be any evidence tending to prove the fact in issue or which reasonably conduces its conclusion as a fairly logical and legitimate deduction and not merely necessary a suspicion or conjecture in regard to it, the case should be submitted to the jury. State v. Brown, *501 205 S.C. 514, 32 S.E. (2d) 825; State v. Turner, 117 S.C. 470, 109 S.E. 119; State v. Quinn, 111 S.C. 174, 97 S.E. 62, 3 A.L.R. 1500; State v. Roddey, 126 S.C. 499, 120 S.E. 359; State v. Walker, 138 S.C. 293, 136 S.E. 215; State v. Epes, 209 S.C. 246, 39 S.E. (2d) 769." State v. Jamison, 221 S.C. 312, 70 S.E. (2d) 342.
The trial Judge's denial of Appellant's motions was clearly a proper exercise of his judicial discretion and should not be disturbed upon appeal.
We have carefully reviewed the record and are convinced that the Appellant had a fair trial, free from error. We are, therefore, of opinion that all exceptions should be overruled; and it is so ordered. Affirmed.
MOSS, LEWIS, BUSSEY and BRAILSFORD, JJ., concur.