**Louis MOORER, Petitioner,**

v.

**STATE OF SOUTH CAROLINA and Ellis C. MacDougall, Director, South Carolina State Board of Corrections, Respondents.**

**Civ. A. No. AC–1583.**

United States District Court
E. D. South Carolina,
Columbia Division.

April 13, 1965.

Matthew J. Perry, Columbia, S. C., for petitioner.

Everett N. Brandon, Edward B. Latimer and Thomas G. Earle, Asst. Attys. Gen., Columbia, S. C., for respondents.

HEMPHILL, Chief Judge.

Before this Court is the question of retention of jurisdiction of this cause, which petitioner desires, for purpose of continuing a stay of execution heretofore issued. Petitioner originally sought asylum of this forum by Petition for Writ of Habeas Corpus filed November 30, 1964, and Petition for Stay of Execution of same date; at the time petitioner was detained and awaiting ordered execution, at the South Carolina State Penitentiary December 4, 1964. On December 1, 1964 this Court issued its order staying execution, and, on December 14, 1964, after hearing counsel for parties, continued the stay pending a determination of the issues involved. See Moorer v. South Carolina et al., 240 F.Supp. 529 (E.D.S.C. 1965).

On March 11, 1965 petitioner filed an amended petition stating: "Since these grounds as set forth in the amended petition for writ of habeas corpus were *at no time presented to the Courts of South Carolina there may be some question concerning whether petitioner has exhausted his State judicial remedies.*" (Emphasis supplied.) He asked that further action be suspended in this forum until he could resort to the State Court. He also asked continuation of the Stay of Execution.

This Court, by decision of March 12, 1965, Moorer v. State of South Carolina et al., 239 F.Supp. 180 suspended further consideration and provided:

"The Stay of Execution shall continue only until the parties shall have had opportunity to show cause, if cause they have, why said stay should not be set aside and this Court's jurisdiction relinquished. Accordingly the counsel shall appear before me at Chambers, Columbia, South Carolina, at 11:00 A.M. Wednesday, March 31, 1965."

The history of this case may be of doubtful inspiration to those purportedly interested in justice, but it has been dragged through the courts, and continues so to be, to the disparagement, professional and secular, of the *administration of justice*. This Court would not for one moment *discourage* a complete exhaustion of remedies, but society deserves (indeed, should not society expect?) that a matter be *terminated*, that justice have some *finality* in our courts. The lack of finality therefore becomes one facet of our problem, definitely included in the spectrum of crime prevalence and prevention as it exists today. The President of the United States, in his message of March 8, 1965, to the Congress of the United States recognized the trend:

"Crime has become a malignant enemy in America's midst.

"Since 1940 the crime rate in this country has doubled. It has increased five times as fast as our population since 1958.

"In dollars the cost of crime runs to tens of billions annually. The human costs are simply not measurable.

"The problems run deep and will not yield to quick and easy answers. We must identify and eliminate the causes of criminal activity whether they lie in the environment around us or deep in the nature of individual men. This is a major purpose of all we are doing in combating poverty and improving education, health, welfare, housing, and recreation.

"All these are vital, but they are not enough. Crime will not wait while we pull it up by the roots. We must arrest and reverse the trend toward lawlessness.

"This active combat against crime calls for a fair and efficient system of law enforcement to deal with those who break our laws. It means giving new priority to the methods and institutions of law enforcement—

"to our police, who are our frontline, both offensive and defensive, in the fight against crime. There is a great need not only for improved training of policemen but for all people to learn about, to understand, and to assist the policeman in his work;

"to our courts, traditionally the symbol and guardian of our cherished freedoms. Local criminal courts are so overloaded that their functioning is impeded and their effectiveness weakened. More courts and judges is one answer, but every possibility of improvement must be explored; and

"to our correctional agencies. We cannot tolerate an endless, self-defeating cycle of imprisonment, release, and reimprisonment which fails to alter undesirable attitudes and behavior. We must find ways to help the first offender avoid a continuing career of crime.

"No right is more elemental to our society than the right to personal security and no right needs more urgent protection.

"Our streets must be safe. Our homes and places of business must be secure. Experience and wisdom dictate that one of the most legitimate functions of government is the preservation of law and order.

"Our system rejects the concept of a national police force. The protection responsibilities lie primarily with State and local governments.

"That is right and proper.

"Yet, crime is no longer merely a local problem. Every city, every State is troubled by the same hard statistical—and human—facts. The extent and seriousness of the problem have made it of great national concern.

"Crime is as old as history. It is hardly new to America. But in our increasingly mobile, urban society, crime problems are not only greater, they are immensely more complex.

"We have not stood idly by in the face of these problems. Many cities and States, as well as the Federal Government, have developed new programs reflecting their growing concern.

"Yet the crime rate continues to increase.

"The time has come now, to check that growth, to contain its spread, and to reduce its toll of lives and property.

"I believe the way to do so is to give new recognition to the fact that crime is a national problem and to intensify our crime prevention and crime fighting at all levels of government."

Petitioner was convicted of Rape at the April 1962 term of General Sessions Court for Dorchester County, South Carolina, the offense having allegedly occurred December 14, 1961. He appealed the verdict of conviction and the following judgment and sentence to the Supreme Court of South Carolina, which, by unanimous opinion dated January 21, 1963 affirmed the judgment of the trial court. State v. Moorer, 241 S.C. 487, 129 S.E.2d 330. Petitioner then served notice of intention to petition the Supreme Court of South Carolina for a writ of certiorari and for this purpose was granted a 90 day stay. The appeal to the United States Supreme Court was abandoned just prior to the expiration of the stay, and he (petitioner) then petitioned Honorable John Grimball, Judge of the Fifth South Carolina Circuit (in which the State Penitentiary where petitioner was detained is located) for a writ of habeas corpus on May 14, 1963. The matter was heard by Judge Grimball, with usual dispatch, on May 17, 1963 and an order was promptly handed down denying relief asked for. On August 30, 1963 Judge Grimball held a supplemental hearing to determine if further grounds existed for the issuance of a writ of habeas corpus, and found none. Appeal was thereafter taken from both Orders

of Judge Grimball, and, on March 30, 1964, the Supreme Court of South Carolina unanimously affirmed. Moorer v. State of South Carolina et al., 244 S.C. 102, 135 S.E.2d 713. Petition for Writ of Certiorari was thereafter filed with the United States Supreme Court, was denied October 12, 1964. Moorer v. State of South Carolina et al., 379 U.S. 860, 85 S. Ct. 119, 13 L.Ed.2d 63. Petition for rehearing or reconsideration of the requested writ was subsequently denied.

Decision, here without finality, now engages for a third time the consideration of this Court. As was pointed out by the late and beloved then Associate Justice later Chief Justice, of the South Carolina Supreme Court in Watson v. Goldsmith, 205 S.C. 215, 221, 31 S.E.2d 317, 319: *"Interest reipublicae ut sit finis litium"* (it is in the interest of the State that there should be an end of litigation. Perhaps this is a case where petitioner seeks "res judicata facet ex albo nigrum, ex nigro album, ex curvo rectum, ex recto curvium (a decision makes white black; black, white; the crooked, straight; the straight crooked.)" Id.

■ Petitioner seeks to have the State forum pass on the constitutionality of those sections [1] of the South Carolina Code upon which the stayed execution is predicated, at the same time asking this court to retain its jurisdiction over the *imposition* of the sentence. Should South Carolina agree with petitioner, no execution could be justified. South Carolina has the initial authority and responsibility, and further authority of this court should be abated pending decision of its tribunals.

■ This Court does not question its authority to take the action heretofore taken, nor to entertain further petition upon proper grounds. Harrison v. NAA CP, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed. 2d 1152; NAACP v. Patty (E.D.Va. 1958), 159 F.Supp. 503; Crawford v. Bailey (E.D.N.C.1964) 234 F.Supp. 700. But, as reasoned in the dissenting opinion in Harrison, supra, the rule invoked to require the Federal Court to keep hands off litigation until the State Court has construed is a device to avoid needless decisions under the Federal Constitution where a resolution of state law questions might make those adjudications unnecessary.

■ There is no showing before this Court at this time that the State tribunal would not grant further stay, as it has done before. There is no showing of difficulty in the previous applications. The inference is all to the contrary. The South Carolina Supreme Court is known for its painstaking care and review of all capital cases. This Court, in this case, finds no such special circumstances to compel the continuing in effect of the stay of execution, or of the retention of jurisdiction. South Carolina Statutes [2] give petitioner ample time to apply to State tribunals for a further stay. This Court, on the other hand, has neither locked the door for the future, nor passed judgment on the merits of further stay. Petitioner must, should, in future approach to this Court, satisfy it that the jurisdiction of this Court is necessary to his fundamental rights as a citizen against impairment of state governmental power. The door of the Federal Court is never closed to such showing. See Bryan v. Austin, D. C., 148 F.Supp. 563.

---

1. Section 16-71, S.C. Code for 1962, provides: *"Rape.—*Whosoever shall ravish a woman, married, maid or other, when she did not consent, either before or after, or ravisheth a woman with force, although she consent after, shall be deemed guilty of rape." Section 16-72, S.C. Code for 1962, provides: *"Punishment for rape or assault with intent to ravish.* —Any person convicted of rape or assault with intent to ravish shall suffer death unless the jury shall recommend him to the mercy of the court in which event he shall be confined at hard labor in the State Penitentiary for a term not exceeding forty years nor less than five years, at the discretion of the presiding judge."

2. See Sections 17-578-17-581 S.C. Code of Laws for 1962.

Petitioner has sought remand to the State Court. Accordingly this Court has remanded, released.

The Stay of Execution heretofore ordered is vacated and set aside.

The jurisdiction of this Court is relinquished.

Let copies of this Order be served on appropriate parties, one of which shall be served on the petitioner by the United States Marshal.

And it is so ordered.